CALEB T. FRAZER *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 21, 1900—Rehearing denied October 9, 1900.*

MUNICIPAL CORPORATIONS—*city not liable for damages to private property for establishment of small-pox hospital.* Under clause 77 of section 1 of article 5 of City and Village act, (Rev. Stat. 1874, p. 222,) concerning the establishment of hospitals, a city may establish a small-pox hospital upon its own ground, and if the hospital is rightfully located and well conducted no action will lie for damages to the value of property in the neighborhood, as such act does not constitute a taking or damaging of private property for public use, within the meaning of the constitution.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

MILES S. GILBERT, WILLIAM C. GILBERT, (GILBERT BROS., of counsel,) for appellants:

The word "property," in section 13 of article 2 of the Illinois constitution, is not limited to tangible property, but includes every species of valuable right and interest. The right of a reasonable use, enjoyment and disposition of property is "property" within said provision. *Insurance Co.* v. *Heiss,* 141 Ill. 61; *Braceville Coal Co.* v. *People,* 147 id. 71; *Railway Co.* v. *Railway Co.* 87 id. 324; *City* v. *Dorr,* 41 S. W. Rep. 1094; *Hutton* v. *City,* 39 N. J. 122.

"Public use" is interchangeable with "purpose." Works calculated to promote the public health by removing the causes of disease are a public use. A small-pox hospital is without doubt a public use. Chap. 24, art. 5, sec. 1, clauses 77, 78; Lewis on Eminent Domain, secs. 188, 201; Randolph on Eminent Domain, sec. 56; 2 Dillon on Mun. Corp. sec. 595.

The right of property owners at common law is to the reasonable enjoyment of property. Ordinary and common uses are reasonable uses. Any use which injuriously affects the substantial use and enjoyment of property or

unduly limits or circumscribes its reasonable use is unreasonable. An unreasonable use of property is an actionable injury—a tort. Nor need there be any actual physical injury to the property itself. *Carhart* v. *Gas Light Co.* 22 Barb. 309; *Campbell* v. *Seaman,* 63 N. Y. 577; *Bohan* v. *Gas Light Co.* 122 id. 24; *Susquehanna F. Co.* v. *Malone,* 73 Md. 277; *Taylor* v. *People,* 6 Park. Cr. 347; *Caleb* v. *Thomas,* 81 Ill. 480; *Laflin* v. *Tearney,* 131 id. 326; *Railroad Co.* v. *Ayres,* 106 id. 511; *Commonwealth* v. *Alger,* 7 Cush. 84; Cooley on Torts, (2d ed.) 670; Wood on Nuisances, (3d ed.) secs. 511, 605, 669, 682.

It is an unreasonable, unusual and extraordinary use of property to utilize it for the segregation of contagious diseases. *Kobbe* v. *New Brighton,* 45 N. Y. Sup. 777; *Mayor* v. *Fairfield Imp. Co.* 39 Atl. Rep. 1081; *Commonwealth* v. *Alger,* 7 Cush. 86.

An injury to a vested right (reasonable use of one's property) is a damage not common to property in general, and as such is a special injury as will support a private action. It being inequitable to injure the property of an individual for the benefit of the many, an injury or damage that is not common to all the public, wherever and however situate, must be said to be a special injury and damage. *Insurance Co.* v. *Heiss,* 141 Ill. 61; *Morrison* v. *Hinkson,* 87 id. 587; *Nevins* v. *Peoria,* 41 id. 515; *Richmond* v. *Smith,* 47 N. E. Rep. 630; Wood on Nuisances, (3d ed.) secs. 605, 669, 682, 689; *Wylie* v. *Elwood,* 134 Ill. 288.

CHARLES M. WALKER, Corporation Counsel, and THOS. J. SUTHERLAND, for appellee:

The injury, if any, suffered by plaintiffs is general to the whole community and of the same kind, and only differs in degree as to the property of different persons as their property is further removed from the hospital, and hence its location gives no right of action to any one. *Parker* v. *Catholic Bishop,* 146 Ill. 15; *Littler* v. *Lincoln,* 106 id. 353; *East St. Louis* v. *Flynn,* 119 id. 200.

The act of locating the hospital was an act done for the general public safety. To allow the small-pox patients to remain scattered over the whole city would endanger the health and lives of all the people. To gather them in one place removed the general danger and allowed better care and quicker recovery.

The placing of the hospital at the point named was the exercise of the police power, and hence no liability arises therefrom. *Culver* v. *Streator,* 130 Ill. 238; *Carthage* v. *Frederick,* 122 N. Y. 263; *Arms* v. *Knoxville,* 32 Ill. App. 604; *Thorp* v. *Railroad Co.* 27 Vt. 140; *Redeaut* v. *Knox,* 148 Mass. 368; *Mugler* v. *Kansas,* 123 U. S. 623; *Train* v. *Boston Disinfecting Co.* 144 Mass. 529; *Railroad Co.* v. *State,* 47 Neb. 464; 2 Beach on Pub. Corp. secs. 1248, 1249; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Coates* v. *Mayor,* 7 Cow. 585; *Beer Co.* v. *Commonwealth,* 97 U. S. 25; *Railroad Co.* v. *Chicago,* 140 Ill. 309; *Railroad Co.* v. *Chicago,* 166 U. S. 226.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellants brought suit against the city of Chicago seeking to recover for damages to their property by reason of the erection, maintenance and intended maintenance by it of a small-pox hospital on property belonging to the city, situated on the east side of Lawndale avenue, within the city. The property of plaintiffs is unimproved, and is situated on the west side of Lawndale avenue between West Thirty-third and West Thirty-fifth streets, and is directly opposite blocks 7 and 8 in Cass' subdivision, property owned by the city on which it built its hospital, which was opened for use December 10, 1896, said property being acquired by the city and said small-pox hospital being erected after plaintiffs acquired title to their lands on the west side of Lawndale avenue.

Plaintiffs' declaration consisted of five counts, and, without giving the substance of each count in detail, charges that the hospital was erected within fifty feet

of and facing Lawndale avenue; that the hospital has
received in the two years since it had been opened, one
hundred small-pox patients; that Chicago has a popu-
lation of two million; that there are annually a large
number of people afflicted with the disease known as
small-pox; that the maintenance of this hospital for the
purpose of isolating those so afflicted has damaged and
will greatly damage plaintiffs' lands in a way not com-
mon to the general public; that small-pox is a highly
contagious disease, and nearness of the hospital fright-
ens persons and renders plaintiffs' property much less
adapted for investment purposes, and limits the use
which plaintiffs might otherwise make of their lands;
that such acts of the defendant constitute a permanent
injury for the benefit of the public, within the meaning
of the section of the constitution prohibiting the damag-
ing of private property for public use without compensa-
tion and unreasonably limit the use to which plaintiffs'
lands might be put, whereby plaintiffs have sustained
special damage not common to the general public; that
it became necessary to collect all persons afflicted with
small-pox into one place, to guard against the spread of
the disease and to facilitate treatment, and the collection
of such patients at the place described renders ingress
and egress to and from plaintiffs' property upon and over
Lawndale avenue (by which public highway alone egress
and ingress was then and is now possible) unsafe and
dangerous to travel upon foot or in carriages or other
vehicles, and greatly interferes with the private property
rights which plaintiffs, as owners of land adjoining said
highway, have as appurtenant to their premises, render-
ing said land much less adapted for investment purposes,
for leasing, and for subdivision into city lots, for build-
ing sites, for the erection of dwellings for rent, and much
less suitable for manufacturing sites and for residence,
and that thereby the market value of plaintiffs' lands has
been and is greatly decreased, to-wit, $15,000.

A general demurrer to the declaration was sustained, and, plaintiffs electing to stand by their declaration, judgment was entered dismissing the suit and against plaintiffs for costs, to reverse which this appeal is prosecuted.

Appellants contend that the acts set forth in their declaration constitute a taking or damaging of private property for a public use, within the intent and meaning of section 13 of article 2 of the constitution, providing that private property shall not be taken or damaged for public use without just compensation. The position of the appellee is, that, a necessity existing for the establishment of a small-pox hospital, it was within the police power of the city to locate the same on its own property, and that any loss suffered by the plaintiffs is *damnum absque injuria*, or that in contemplation of law the loss sustained by the plaintiffs is compensated for in the benefits received thereunder, and that no compensation can be had for the injuries sustained.

The case at bar presents no taking of private property, neither is there a physical injury. Nor does it fall within that class of cases where, notwithstanding there has been no taking or physical injury, together with resulting damages, yet the intrinsic value of the property is lessened by reason of access being interfered with or its accessibility is prevented or impaired. The real injury alleged and for which plaintiffs seek a recovery is the menace to the health of the inhabitants in the vicinity of the hospital, or, rather, to those inhabitants who in the intended future use of plaintiffs' property might become residents in the vicinity thereof, and who, by reason of its location, would be deterred from purchasing plaintiffs' property, and the consequent loss in the speculative value thereof. Neither does it appear from the declaration that the city has been careless or negligent in the maintenance of the hospital, or that by reason of any act of omission or of commission on the part of the city it has become a nuisance to any greater extent than is in-

herent to the location and use of such an institution. Counsel for appellant in their brief state: "We are not here complaining of any negligence of the city. We assume that the pest-house is rightfully located and well conducted." The demurrer admits the facts well pleaded in the declaration. Does the declaration set forth a cause of action?

The seventy-seventh clause of section 1 of article 5 of the City and Village act expressly gives power to the city "to erect and establish hospitals and medical dispensaries, and control and regulate the same." The establishing of this small-pox hospital was therefore clearly within the police power of the city, and it is clear, therefore, that in the absence of carelessness or negligence, or of an abuse of that power in any way, the hospital could not be a public nuisance. Nor could it be a private nuisance unless it should become such in its subsequent use or unwarranted operation, having in view the peculiar conditions under which it was established and maintained.

In *Rigney* v. *City of Chicago,* 102 Ill. 64, this court said (p. 80): "There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not and never has afforded relief. For instance, the building of a jail, police station or the like will generally cause a direct depreciation in the value of neighboring property; yet that is clearly a case of *damnum absque injuria.*"

In *Oliver* v. *Worcester,* 102 Mass. 489, the court said: "The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity in the discharge of duties imposed upon them by the legislature for the public benefit, and for acts done in what may be called their private character, as the management of property and rights held by them for their own immediate profit or advantage as a corpora-

tion, although inuring, of course, ultimately to the benefit of the public. In the one case no private action lies unless it be expressly given; in the other there is an implied or common law liability for the negligence of the officers in the discharge of such duties."

In *Village of Carthage* v. *Frederick,* 122 N. Y. 263, the court, in speaking with reference to the police power, said: "Municipal corporations have exercised this power for time out of mind, by making regulations to preserve order, to promote freedom of communication and to facilitate the transaction of business in crowded communities. Compensation has never been a condition of its exercise, even when attended with inconvenience or peculiar loss, as each member of a community is presumed to be benefited by that which promotes the general welfare. All authorities agree that the constitution presupposes the existence of the police power, and it is to be construed with reference to that fact."

In Sedgwick on Constitutional Law (435) it is said: "The clause prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property and though no compensation is given."

Appellants concede the well settled rule that private property itself a nuisance and obnoxious to the health or safety of a community may be abated by a municipality, under its police power, without being liable for resulting damage to the owner thereof, but insist this case presents a condition where private property itself unoffending, and owned and acquired without any infringement of the property or personal rights of others, has been in-

jured to a degree greater than the property of others so held and owned by them, and that the guaranty of the constitution that private property shall not be damaged for public use without just compensation therefor, applies. Conceding that the declaration shows special injury to the appellants in excess of that shared by them with the general public, it could only be under this constitutional provision that a recovery could be here maintained. The law is well settled that where a thing not *malum in se* is authorized to be done by a valid act of the legislature, and it is performed with due care and skill, in strict conformity with the provisions of the act, its performance cannot, by the common law, be made the ground of an action, however much one may be injured by it. (*Rigney* v. *City of Chicago, supra.*) In support of appellants' contention that the acts complained of here are actionable under our constitution, reliance is placed, among other cases, on the *Rigney case, supra, Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 Ill. 226, and *Penn Mutual Life Ins. Co.* v. *Heiss,* 141 id. 35.

There is a marked difference in the use by a city of its property carefully, prudently and without negligence, in the reasonable exercise of its police power, and that of the change of grade of streets, the building of a viaduct, the closing of a street or alley, or the inconvenience caused by the use and operation by a railroad company of its property. In the case of the change of grade the measure of damages allowable is the difference in the value of the property before and after the making of the improvement, taking into consideration the increased value of the improvement to the property itself. Nor, as above indicated, can there be any recovery for damages sustained, shared by the public in common. Supposed damages growing out of the proper exercise of the police power must be considered *damnum absque injuria,* in the theory of the law that the plaintiff is compensated for the injury sustained by sharing in the general benefits

which are secured to all by reason thereof. As stated by Dillon in his work on Municipal Corporations (vol. 1, 212): "Every citizen holds his property subject to the proper exercise of the police power, either by the State legislature directly, or by public or municipal corporations, to which the legislature may delegate it. * * * It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbance. * * * If one suffers injury, it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

But, finally, appellants contend that it is an unreasonable, unusual and extraordinary use of property to utilize it for the segregation of contagious diseases, and cite in support thereof *Kobbe* v. *Village of New Brighton,* 45 N.Y. Sup. 777, *Mayor* v. *Fairfield Improvement Co.* 39 Atl. Rep. 1081, and *Commonwealth* v. *Alger,* 7 Cush. 86. Under the express delegation of power by the legislature we can not hold that the application of property for the use of a small-pox or other hospital is such an unusual or unreasonable use of property as would take it out of the police power of the city so as to render it liable for such application, when, as here, it is conceded the pest-house is rightfully located and well conducted. In the case of *Mayor* v. *Fairfield Improvement Co. supra,* the complainants sought by injunction to restrain the city of Baltimore from placing and keeping on a twenty-acre tract of land owned by the city a woman afflicted with leprosy, which land of the city adjoined lands of the complainants. There is a wide difference between the establishing and maintaining of a hospital for the treatment of disease and in appropriating a piece of property for the keeping of a single patient by an unskilled laborer and his family having no knowledge of the disease of leprosy, with

which the patient was afflicted. The facts appearing in
that case might well have justified the interference by
the court, by injunction, to restrain the use, having ref-
erence to all the surrounding conditions, and yet not mili-
tate against the view we have taken that annoyance or
damage resulting from the rightful location and proper
conducting of the hospital in question offers no basis for
relief in damages. As was said in that case: "The evi-
dence shows that the health authorities propose to place
this woman in the charge of a laborer and his wife. They
are unskilled people. They possess no authority to re-
strain the woman from wandering away, and they have
no legal right to detain her against her will. They are
not officers of the city nor clothed with any of the powers
of the board of health. They are simply employed by
the city to care for this woman on the city's property,
where no health officer or city official is stationed." In
commenting on the right to the exercise of the police
power, the court, with reference to an unreasonable ex-
ercise thereof, say: "Whatever immunity a municipality
may have in exercising a public as contradistinguished
from a strictly corporate power, it does not result from
some collateral act or from the negligent doing of a per-
missible act. The infliction of an injury upon another is
neither the natural or necessary result of an exercise of
the power to build a hospital, but if injury does ensue it
would result from the collateral circumstance that the
place selected was not the appropriate site or from the
negligent method of doing what would otherwise be a
lawful act." And this case recognized the doctrine that
for the doing of an act clearly within the power of the
city under its police power, where injury is the necessary
result of the doing thereof, no redress can be had. The
court say: "The statute law of this State confers upon
the mayor and city council plenary power to establish,
both within and beyond the city's limits, hospitals and
pest-houses for the isolation and treatment of contagious

and infectious diseases.    The preservation of the public health renders such legislation highly essential, and the authority of the General Assembly to enact it in the exercise of the police power of the State is beyond question or controversy.    Within the scope of the power thus granted the whole authority of the State is included and delegated.    (*Harrison* v. *Mayor*, 1 Gill, 264.)    And, therefore, whatever the State may directly do in furtherance of these objects the municipality clothed with the delegated power from the State may also lawfully perform, though there may be a difference as to the legal consequences resulting from an exercise of the power by the State directly and those flowing from an exercise of the same power by the municipality.    If it be conceded that the State may, in exercising a public power, create a private nuisance with immunity, the immunity grows out of the public necessity and rests upon the State's sovereignty; but it cannot, or, at all events, will not, in the absence of an explicit legislative delegation, be assumed that the State would, if directly exercising the same power, so exercise it as to produce or cause an injury to the rights of property to an individual, unless, perhaps, the very doing of the act directed to be done will necessarily and unavoidably, under any condition, result in the creation of what would be, but for the authorization, a private nuisance."

We can see no difference, in principle, between the right of a city to establish and maintain a small-pox hospital and to erect and use jails, fire-engine houses, calabooses and the like.    Greater care might be required in the maintenance of one than the other, and different considerations would undoubtedly enter into the selection of a site of a pest-house than of the fire-engine house or jail, but the city would be liable only for an abuse of authority or an unwarranted exercise of discretion in locating or maintaining the same, having reference to the present necessities, the crowded condition of the locality

in which they are placed or maintained, and other pertinent facts and circumstances. The declaration does not seek to charge any act of omission in this regard.

The demurrer was properly sustained, and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*