## ANABLE *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF MONTGOMERY.

[No. 4,881.   Filed June 9, 1904.   Rehearing denied November 17, 1904.]

1. HEALTH.—*Powers of Board.—Authority.*—By §6718 Burns 1894, Acts 1891, p. 15, §8, the board of commissioners of a county are *ex officio* a board of health, and it is their duty "to protect the public health by the removal of causes of diseases when known, and in all cases to take prompt action to arrest the spread of contagious diseases," and in the exercise of their discretion within the authority conferred such board's acts have the force of an act of the legislature, the whole authority of the State being included and delegated. p. 75.

2. SAME.—*Legislative Powers of Board.—Police Power.—Private Property.—Invasion of.—Judicial Question.*—While the action of a board of health is usually legislative, and not subject to review by the courts, yet under the guise of the police power of the State,

personal and property rights can not arbitrarily be stricken down, and if such rights are so invaded, such board's action is open to review by the courts.　p. 75.

3.　Police Power.—*Hospital.*—*Destruction of Private Property.*— *Compensation.*—Where a board of health provides for the erection of a hospital for the benefit of the public health, and such erection destroys the value of private property, such action will be upheld by the courts only when most clearly and unequivocally authorized, the distinction being kept clearly in view between private property contaminated with contagious disease, and that which is not dangerous to the public health.　p. 75.

4.　Same.—*Destruction of Private Property.*—*Justification.*—Where plaintiff's private property has been destroyed by the State or one of its municipalities, it is not a sufficient answer in justification to say that the act of destruction complained of was performed in the exercise of the police power, but such answer must show that it was in the *proper* exercise of such power, taking into consideration all of the circumstances.　p. 77.

5.　Same.—*Grant to Municipality.*—*Presumption.*—Where the State directs some specific act to be done, which, without such authorization would constitute a private nuisance, but does not give specific directions how the same shall be done, it can not be presumed, in the absence of a public necessity therefor, that the State would so exercise such power as to injure private property.　p. 77.

6.　Municipal Corporations.—*Statutory Powers.*—*Contagious Diseases.*—*Hospital.*—*Private Property.*—Where a statute makes it the duty of the county board of health "in all cases to take prompt action to arrest the spread of contagious diseases," if such board decides to build a hospital in such manner as to injure or destroy private property, it must be shown in justification thereof either that such act was expressly authorized by statute or is plainly and necessarily implied from the powers expressly conferred, and the burden of showing such justification is on such board.　p. 77.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Charles Anable against the Board of Commissioners of the County of Montgomery. From a decree for defendant, plaintiff appeals. *Reversed.*

*G. D. Hurley* and *H. D. Vancleave,* for appellant.

*Benjamin Crane, C. M. McCabe* and *I. C. Dwiggins,* for appellee.

Robinson, J.—Suit by appellant for damages because of the location and maintenance of a pesthouse near his land.

The complaint, to which a demurrer was sustained, avers that appellant owns about ten acres of land, described, just north of the city limits of Crawfordsville, in a populous district, and that the adjacent land is built up and used for residences; that appellant's land is susceptible of being platted and sold for suburban home sites, and for that purpose was on January 11, 1901, worth $2,000, and for all other purposes $1,750; that on the above date the county owned a poor-farm of 140 acres, lying north and east of appellant's land, and for a long time prior thereto had maintained on the north-line thereof a county pesthouse for the detention and treatment of smallpox patients, and as thus located did not in any way interfere with the value of appellant's land for building sites; that on the above date appellee, in lawful session, wrongfully ordered, of record, the secretary of the board of health to remove the pesthouse to the southwest corner of the poor-farm, on land abutting appellant's land, and ordered the secretary to build extensions thereto, and do such other things as were necessary for the arrest of an epidemic of smallpox then prevailing in the county; that pursuant to such order the secretary moved the same, built additions thereto, and erected water-closets adjacent thereto within ten feet of appellant's land; that upon completion of the same appellee wrongfully confined therein a large number of persons afflicted with smallpox, and wrongfully burned and buried on the premises clothing of persons so afflicted, and deposited dangerous excretions from patients in the vaults adjacent to appellant's land; that by reason of these wrongful acts and the wrongful removal and permanent maintenance of the pesthouse as above stated, and the treatment of smallpox patients therein, the value of appellant's land has been and is totally destroyed for platting for home sites and for all other purposes, and the enjoyment of the same by appellant is destroyed; that appellant's only place of ingress and egress to and from his land is by passing within ten feet of such pesthouse; that the same is offensive

to the sight, dangerous to appellant's premises, an obstruction to the free use of appellant's property, a nuisance, and totally destroys the value of appellant's land for any purpose whatever.

1.    Appellee, constituting a board of health *ex officio* for the county, is charged with the duty "to protect the public health by the removal of causes of diseases when known, and in all cases to take prompt action to arrest the spread of contagious diseases." Section 6718 Burns 1894, Acts 1891, p. 15, §8. The legislature has not attempted to designate the means that shall be employed, nor the manner in which the powers may be exercised, by the board in preventing the spread of contagious diseases, but has left these matters to the health board's discretion within the authority conferred. An act done by the board by virtue of statutory authority has, within the board's jurisdiction, the force of an act of the legislature. Within the scope of the power granted, the whole authority of the State is included and delegated. See *Swindell* v. *State, ex rel.* (1895), 143 Ind. 153, 35 L. R. A. 50; *City of Salem* v. *Eastern R. Co.* (1868), 98 Mass. 431, 96 Am. Dec. 650.

2.    And while it is true that an act done by a municipality for the protection of the public health presents, generally, a legislative question not subject to review by the courts, yet, as said in *Blue* v. *Beach* (1900), 155 Ind. 121, 131, 50 L. R. A. 64, 80 Am. St. 195 : "Such measures or means must have some relation to the end in view, for, under the mere guise of the police power, personal rights and those pertaining to private property will not be permitted to be arbitrarily invaded by the legislative department; and consequently its determination, under such circumstances, is not final, but is open to review by the courts." See *In re Jacobs* (1885), 98 N. Y. 98, 58 Am. Rep. 636.

3.    If appellee's right to locate the pesthouse where it has located it is absolute, the pesthouse is not a nuisance *per*

*se,* nor would the placing of persons therein afflicted with
smallpox be wrongful.  A pesthouse is a public necessity.
It is authorized by law.  Its erection being legal it could
not be a nuisance *per se.*  A right of action might arise if
such a house were negligently or wrongfully conducted
*(Haag* v. *Board, etc.* (1878), 60 Ind. 511, 28 Am. Rep.
654), but the pleading does not present this question.  It
is averred, among other things, that appellant's property,
suitable for residences, and in a populous locality, has
been rendered worthless, and that the only place of ingress
and egress to and from his land is by passing within ten
feet of the pesthouse.  It is quite true that the distinction
must be kept in view between the exercise of the police
power and the exercise of the right of eminent domain—that
in the latter case actual compensation must be made to the
owner for property taken or injured, and in the former the
injury is either *damnum absque injuria,* or the owner is
considered compensated by sharing in the general benefits
resulting from the exercise of the power.  However, more
important than this distinction is the constitutional guar-
anty that no man's property shall be taken by law without
just compensation.   And it must be conceded that the
exercise of a power which destroys property, or its value,
or takes away any of its essential attributes, deprives the
owner of such property.  So that if a municipality, in the
exercise of the police power, should do an act which ren-
ders the property of an individual worthless, and which
would be, in effect, a taking of the property, such act
should not be permitted to stand except upon a showing
that the act as done was most clearly and unequivocally
authorized.   And the distinction must be kept in view
between an exercise of the police power whereby private
property, contaminated with a dangerous disease is sum-
marily destroyed, and private property, itself not dangerous
to the public, is directly injured.   The immediate danger

to the public health which justifies the exercise of the power in the former case, does not exist in the latter.

4. It is not a sufficient answer to a person whose property has been injured or destroyed to say simply that the act complained of was done in the exercise of the police power for the preservation of the public health. It can not be said, no matter how comprehensive the power, that a municipality might locate a pesthouse in the midst of a thickly settled neighborhood, or that the power to erect a pesthouse carries with it the further power to locate it at a place where it will injure others. The infliction of an injury upon another is not necessarily the natural result of the erection of a pesthouse, nor is it an inevitable consequence of an exercise of the power to erect and maintain it. The right to do the particular act does not essentially carry the right to do it so as to inflict injury upon an innocent individual. The citizen does not hold his property subject to the exercise of the police power by the State or municipalities to which it has been delegated, but he holds it subject to the *proper* exercise of such power. And in determining whether there has been a proper or an unwarranted exercise of discretion in locating a pesthouse at a particular place regard must be had to the location itself, the present necessities of the particular case, and other pertinent facts and circumstances.

5. Moreover, if it be conceded that the State might direct some particular specific act to be done in a specified manner, which would necessarily, under any condition, result in the creation of what would be, without such authorization, a private nuisance, yet in the absence of specific legislative direction as to the manner in which the act should be done, it should not be assumed that the State, public necessity not requiring it, would so exercise the power as to injure the property of an individual.

6. It must be noted that the statute simply makes it the duty of the board "in all cases to take prompt action

to arrest the spread of contagious diseases." The board is not required by the statute to erect and maintain a pesthouse. The discretion committed to the board is not limited to determining the location of a pesthouse, but it also involves the duty of determining whether it shall be built at all. That is, if the board erects a pesthouse, it does so under authority necessarily implied from the powers expressly conferred. And if the board pleads statutory sanction in justification of an act which the general rules of law constitute a nuisance to private property, it should show either that the act is expressly authorized by the statute, or that it is plainly and necessarily implied from the powers expressly conferred. "Where rights are infringed," said Chief Justice Marshall in *United States* v. *Fisher* (1805), 2 Cranch 358, 390, "where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness, to induce a court of justice to suppose a design to effect such objects."

In *Hill* v. *Managers, etc.* (1879), 4 Q. B. D. 433, 6 App. Cas. 193, suit was brought for damages and for an injunction to restrain the use of a smallpox hospital erected near the premises of the plaintiff, on the ground that it was a nuisance. The defendants justified under the act of parliament which authorized the erection of asylums for the sick, and referred to smallpox patients as among the class of persons to be provided for. Upon the trial the hospital was found to be a nuisance, and upon appeal the judgment was affirmed. Among the opinions pronounced in the house of lords was one by Lord Watson, in which he said: "I do not think that the legislature can be held to have sanctioned that which is a nuisance at common law, except in the case where it has authorized a certain use of a specific building in a specified position, which can not be so used without occasioning nuisance, or in the

case where the particular plan or locality not being prescribed, it has imperatively directed that a building shall be provided within a certain area and so used, it being an obvious or established fact that nuisance must be the result. In the latter case the onus of proving that the creation of a nuisance will be the inevitable result of carrying out the directions of the legislature, lies upon the persons seeking to justify the nuisance. Their justification depends upon their making good these two propositions—in the first place, that such are the imperative orders of the legislature; and in the second place, that they can not possibly obey those orders without infringing private rights. If the order of the legislature can not be implemented without nuisance, they can not, in my opinion, plead the protection of the statute; and, on the other hand, it is insufficient for their protection that what is contemplated by the statute can not be done without nuisance, unless they are also able to show that the legislature has directed it to be done. Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose." See, also, *Truman* v. *London, etc., R. Co.* (1883), 25 Ch. D. 423; *Hooker* v. *New Haven, etc., Co.* (1841), 14 Conn. 146, 36 Am. Dec. 477; *Coggswell* v. *New York, etc., R. Co.* (1886), 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; *Hill v. Mayor, etc.* (1893), 139 N. Y. 495, 34 N. E. 1090; *Mayor, etc.,* v. *Fairfield Improv. Co.* (1898), 87 Md. 352, 39 Atl. 1081, 67 Am. St. 344, 40 L. R. A. 494; *Baltimore, etc., R. Co.* v. *Fifth Baplist Church* (1883), 108 U. S. 317, 27 L. Ed. 739, 2 Sup. Ct. 719.

We think the complaint sufficient to require appellee to answer.

Judgment reversed, with instructions to overrule the demurrer to the complaint.