# PORTO RICO FEDERAL REPORTS .

---

SCOVILLE ET AL.

*v.*

A. RUIZ SOLER ET AL.

San Juan, Equity, No. 1004.

RE INJUNCTION TUBERCULOSIS HOSPITAL.

Constitutional Law—Rights of Man.

    1. The three fundamental rights of man recognized since the Declaration of Independence are life, liberty, and property, and, if possible, the two former are more basic than the last.

Same—American Citizenship—Porto Rico.

    2. American citizens residing in Porto Rico have certain political rights different from Americans coming temporarily, but as to life, liberty, and property, the citizens of each state are entitled to all privileges and immunities of citizens in the several states and territories.

---

NOTE.—On right of property owners to complain of location of contagious disease hospital in neighborhood, see notes in 5 L.R.A.(N.S.) 1028, 25 L.R.A.(N.S.) 228.

On the question as to whether hospitals are a nuisance, see notes in 29 L.R.A.(N.S.) 49 and 52 L.R.A.(N.S.) 1032.

    XI. Porto Rico.—1.

Scoville v. Soler.

Jurisdiction—Domicil.

3. There is no appreciable difference between state citizenship which comes up in the Federal courts on the mainland, and the domicil which is required in the Jones Act as to this court. Domicil consists in actual residence, with the intent to remain. The essential fact in domicil is the absence of any intention to live elsewhere. The distinction is not unlike that as to vested and contingent estates, resting not upon future possibilities, but upon future certainties, only the time of occurrence being uncertain. If one comes with a fixed intention to return to the mainland upon occurrence of an event certain to happen, his domicil does not become vested in Porto Rico.

Parties—Submission—Absent Plaintiff.

4. A complete decree can be granted without the presence of a separable interest which is without the jurisdiction. The rule that all plaintiffs must recover, or none, does not apply in such a case.

Sale—Legal Process not Enjoined.

5. A sale will not be enjoined because of inconvenience to the third party, provided the sale be for a legal purpose.

State—Duties—Help.

6. The modern state not only passes laws as to civil matters and for the collection of claims, but performs a definite duty in taking care of the unfortunate, including prevention and extirpation of tuberculosis. In discharging such duties the public cannot take private property except upon payment of just compensation ascertained according to law. This applies to Porto Rico, and covers tuberculosis.

Private Property—Nuisance.

7. Public authorities may injure or destroy private property when necessary to prevent disease, but this does not authorize damage of property not dangerous to public health. The right to erect hospitals is subject to the right of the individual to own property without molestation by unnecessary nuisance. Maintenance of a tuberculosis sanatorium in a residence section is a nuisance, even though the injury is due to fear of residents.

Nuisance—Residential Section.

8. A district is residential, not because it is in town, but be-

Scoville v. Soler.

cause it has residences, and the health of such a country district, is entitled to protection.

Opinion filed September 4, 1918.

## Statement of Facts.

The facts necessary for the determination of the case are substantially the same as those set out on the preliminary hearings, and what has been stated therefore in connection with previous opinions and in the present opinion is sufficient for the purposes of this case without more.

*Messrs. Charles Hartzell* and *Daniel F. Kelly* for plaintiffs.

*Mr. R. G. Molina* for defendants Hubbard.

*Messrs. Howard L. Kern,* Attorney General, and *Ferdinand Tannenbaum,* Assistant Attorney General, for defendant Commissioner of Health.

HAMILTON, Judge, delivered the following opinion:

1. The case presents the question of the relative rights of residents and property owners on the one side and of the public represented by health officials on the other as to the location of a tuberculosis hospital. The question is an important one from both points of view. The residents and property owners have a right to protection against all improper exercise of authority on the part of the public officials, for not only their property

Scoville v. Soler.

and their homes, but their health, if not life, is involved. On the other hand, what is true of this particular community where it is sought to place the hospital may be true of any other. If the health authorities are not able to place a tuberculosis hospital on this site, the same questions may well be raised by residents and property owners in any other locality that may be selected, with the result that it may be difficult, if not impossible, to locate the hospital at all. The necessity for such institutions is unquestionable, and some means must be found either to reconcile the opposing interests or to ascertain that one or the other has no right under the circumstances of the particular case. The importance of the matter lies in its transcending merely property interests. Ordinarily damages will lie for injury to property interests; or, when the injury is substantial, the contemplated act may be enjoined entirely. The three fundamental rights of man recognized since the Declaration of Independence are life, liberty, and property, and, if possible, the two former are more basic than the last, for no money damage is adequate in the case of life and health. If really involved; as contended, the only remedy is by absolute injunction.

2. It may be well to remove one misapprehension. It is argued on behalf of the defendants not only that public interests are of greater importance than private property, but that bona fide citizens of Porto Rico have rights superior to those of other Americans living here temporarily for business or pleasure. It cannot be too clearly understood that there is no distinction between the rights of Americans, whether they are here in Porto Rico for one day or for life. There are privileges attached to local citizenship connected mainly with the exercise of political rights, such as voting and holding office; but as

regards life, liberty, and property, the constitutional provision applies that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Const. art. 4, § 2. · This provision has not been expressly carried forward into the Act of March 2, 1917, "To Provide a Civil Government for Porto Rico and for Other Purposes," but it is implied in the Bill of Rights which is prefixed thereto and in the provisions of § 5, extending American citizenship to all persons. Equality of American citizenship is something which even Congress could not vary.

3. A preliminary question as to jurisdiction of this court must first be passed upon. The Federal courts have jurisdiction only in certain cases, between certain persons, and sometimes, where a certain amount is involved, presenting the three kinds of jurisdiction,—subject-matter, parties, and power of the court itself. The point is raised as to the persons of the plaintiffs, that they are domiciled in Porto Rico and therefore cannot maintain a suit against a Porto Rican official. Plaintiff Scoville came from Kentucky, and has resided in Porto Rico a number of years, having been at one time clerk of this court. It is claimed that he should be considered as domiciled in Porto Rico. Scoville, according to the evidence, has a definite intention of returning to the United States, preferably to Kentucky, but will be influenced by climatic conditions. Plaintiff Bacon came here on account of the rigor of the climate of Connecticut, where she lived, and expected to make this her home, provided a brother came out; but he has definitely decided not to come out, and she expects to return to the United States, preferably to Connecticut, but would have to spend her winters elsewhere. Plaintiff Vosburg came to Porto Rico for business purposes and

has resided here several years, like the others having bought, and is living on land in the vicinity now in question. He is now in the Army and expects to return to Porto Rico after his term of service, with no definite views as to changing his residence. It is to be borne in mind that Porto Rico up to the present is, and for many years to come will be, quasi foreign to Americans from the mainland on account of the prevalence of the Spanish language and of very different social customs. It is not necessary to think of these as inferior in any respect to the American, but it is necessary to think of them as so different that an American from the states is in an entirely different position from what he is when he goes, for instance, from Alabama to New York, or from Pennsylvania to California. In the United States the change is merely of local surroundings, the institutions being practically identical, while one coming here from the states finds language, institutions, and customs foreign to him, and from the necessity of the case most Americans have some idea, definite or indefinite, of finally returning to the United States. Porto Rico is so thickly populated it cannot be Americanized by immigration as Florida was. This is unfortunate both for the Americans and for Porto Rico, but will no doubt gradually change as American institutions are better understood and come to prevail, but the case at bar has to be decided upon the facts as they now exist.

There seems to be no appreciable difference between state citizenship, which comes up in the Federal courts, on the mainland, and the domicil which is expressed in the Jones Act as to this court. Domicil consists in (1) actual residence, and (2) intent to remain. As to the first factor there is usually little doubt, and in the case of all three plaintiffs in this instance

no doubt at all. They all live here. As to the second, the rule used to be that the old domicil remained until a new one was clearly acquired. This, however, especially in the states, where persons change so readily from one state to another, has proved unsatisfactory, and the present rule is to accept residence as a test unless the intention to change is definite. If, as has been said by Mr. Justice Day, there is merely a floating intention at some time to return, this is not sufficient to change the domicil which prima facie attaches to actual residence. Gilbert v. David, 235 U. S. 570, 59 L. ed. 364, 35 Sup. Ct. Rep. 164. This court went into the matter somewhat in the case of Molina v. Correa, 10 Porto Rico Fed. Rep. 287. There, however, the question was not litigated and the evidence was all in one direction. In Wetmore v. Rymer, 169 U. S. 115, 42 L. ed. 682, 18 Sup. Ct. Rep. 293, it has been held that the amount and domicil involved so far as it is jurisdictional, is one of fact which may be decided by the court with or without a jury as it sees proper. Act of March 3, 1875, 18 Stat. at L. 470–472, chap. 137, and amendments. The case at bar being in equity, the evidence was presented as part of the main case and is therefore in the record. In any case, however, it would appear to have been the intention of Congress to leave the mode of raising and trying such issues to the discretion of the trial judge. As expressed by Mr. Justice Holmes: "The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere, . . . or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode." Williamson v. Osenton, 232 U. S. 619, 624, 58 L. ed. 758, 761, 34 Sup. Ct. Rep. 442; Dicey, Confl. L. 2d ed. § 111.

This negative mode of expression is, however, rather unsatisfactory. "The very meaning of domicil is the technical preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. Williamson v. Osenton, supra, p. 625. Even the domiciliary identity of husband and wife is pronounced by Mr. Justice Holmes to be "the now vanishing fiction of identity of persons" so far as relates to her rights over against him. As expressed by Judge Story, and approved in Gilbert v. David, supra: "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domicil, notwithstanding he may entertain a floating intention to return at some future period." Story, Confl. L. 7th ed. § 46. The essence of domicil is one's place of abode, which he has no present intention of changing. Gilbert v. David, supra, p. 570. The distinction is not unlike that as to vested and contingent estates, resting not upon future possibilities, but upon future certainties, only the time of occurrence being uncertain. If one comes with a fixed intention to return to the mainland upon occurrence of an event certain to happen, his domicil does not become vested in Porto Rico.

Under these principles it would seem that plaintiffs Scoville and Bacon are not domiciled in Porto Rico, for they have a present intention, which has always existed in one form or other, of not residing in Porto Rico permanently, but on the other hand of returning to the mainland of the United States. It cannot be said that this is so clear of plaintiff Vosburg, and the burden is upon him to prove that and every other element in this case. His intention after returning from the war

is to come back to Porto Rico indefinitely. It would seem, therefore, that he has not made out a case of domicil outside of Porto Rico, and the cause at issue must be dismissed as to him.

4. What is the effect of a submission on the merits when one plaintiff is found to be without the jurisdiction of the court? Under § 2 of the Act of 1875 as amended, one of the defendants may remove a separable controversy from the local courts. In such a case, if the interest of the party whose situation as to residence or citizenship would defeat the jurisdiction is a separable interest, and the matters involved in the bill can be wholly determined between the parties properly before the court without materially affecting the party holding the separable interest, then the court will dismiss the party holding the separable interest and retain jurisdiction. Simkins, Fed. Eq. Suit, chap. 12, p. 67. The test of this separable interest is that a complete decree can be granted without the presence of the separate interest and without injury to the party holding it. Ayres v. Biswall, 112 U. S. 192, 28 L. ed. 695, 5 Sup. Ct. Rep. 90; Geer v. Mathieson Alkali Works, 190 U. S. 428, 47 L. ed. 1122, 23 Sup. Ct. Rep. 807. It is true that this relates especially to removal of cases from local courts, but the principle is the same. If the interest of plaintiffs Scoville and Bacon can be determined without the presence of Vosburg, no object is gained in dismissing the whole suit because a minority property interest is joined, and such action will be taken in this case. It presents a different proposition from the general rule that all plaintiffs must recover or none. The property and health interests of plaintiff Scoville and Bacon are the same whether Vosburg is a party to the suit or not. The reason failing, the rule itself does not apply.

Scoville v. Soler.

5. The case at bar is one in which an injunction was issued against the sale by defendants Hubbard of certain property to defendant Soler, because, as alleged in the bill, it was to be used for the erection of a tuberculosis sanatorium or hospital. Before taking up the question of use of the property it will be well to consider the question of sale by defendants Hubbard. It might well be that a property owner could be enjoined from disposing of his property for an illegal purpose, for the whole transaction would partake of the general offense. The case at bar, however, does not present an illegal object. A tuberculosis sanatorium or a tuberculosis hospital is a necessity, particularly in Porto Rico, where the evidence shows the disease, commonly called the "white plague," is very prevalent. A larger proportion of deaths reported in the health statistics arise from this disease than from any other whatever; and it is a matter of judicial knowledge that individual effort has long been directed to control of the disease and to awaken public authorities to its importance. There is no sense in which it can be said that any means for extirpating or even modifying the disease can be thought of as a wrong against the public or against individuals.

A recent decision of the supreme court seems to make clear that the sale of property for legal purposes, no matter how distasteful it may be to neighbors, is one of the rights of the American citizen. In the southern states, where a division of the white and black races is considered a fundamental necessity of civilization, it has long been the practice, both in legislation and in contracts, to provide that negroes shall not buy property and live in communities predominantly white, and yet the Supreme Court has recently, by unanimous vote in a case com-

Scoville v. Soler.

ing up from Louisville, decided that this discrimination is unconstitutional. As a result a negro can buy a residence in an exclusively white neighborhood. Buchanan v. Warley, 245 U. S. 60, 62 L. ed. 149, L.R.A.1918C, 210, 38 Sup. Ct. Rep. 16, Ann. Cas. 1918C, 1201. It would seem to follow that the courts on the same principle cannot prevent an individual citizen from selling property to public authorities. This is not at all prejudging the question as to whether the public authorities have the right to use this property for a specific purpose. That may depend upon the circumstances of the particular case. The sale by defendants Hubbard to defendant Soler was within the rights of both of them. It is well, however, that provisionally the matter was held up, so that the whole question could be properly presented. An opportunity was also presented for making other arrangements.

6. It is not only the right, but it is the duty of the health authorities, including defendant Soler, to take steps to control, and if possible to extirpate, tuberculosis, and to that end he may acquire property and erect a sanatorium for the treatment of curable cases and a hospital for the care of hopeless cases. No court could or should interfere with the discharge of so great a public duty. A place, or places, must be found for the location of such institutions. On the other hand, this cannot be done to the prejudice of other citizens. People in health deserve at least as much protection against tuberculosis as those who have the misfortune to suffer from the disease. It seems to be the same general principle of police regulation which applies to many public matters. It is becoming more and more appreciated as time goes on that the function of the modern state is not only to pass laws as to civil matters and for the

Scoville v. Soler.

prevention of crime, but also to perform the social duty of taking care of the unfortunate, from whatever cause this arises, including the care and extirpation of disease. This includes hospitals, pesthouses, slaughterhouses, quarantine, prisons, and similar functions, divided, it may be, between the general and local authorities. Frazer v. Chicago, 186 Ill. 480, 51 L.R.A. 306, 78 Am. St. Rep. 296, 57 N. E. 1055; Anable v. Montgomery County, 34 Ind. App. 72, 107 Am. St. Rep. 173, 71 N. E. 272. In such cases it is a difference of degree, not of principle.

The principle seems to be that in discharging such duties the public must take care that private property shall not be taken or damaged for public use except upon the payment of just compensation, ascertained in the manner provided by law, and that no law shall be enacted which shall deprive any person of life, liberty, or property without due process of law, as stated in the Organic Act of Porto Rico, and expressed in the Constitution of the United States. How this will apply to tuberculosis will depend upon the nature of the disease itself.

The evidence in the case at bar is full and instructive. It seems that tuberculosis is a germ disease, communicated by contract. The germ is microscopic, shaped like a jointed cane, multiplying with inconceivable rapidity in favorable conditions of warmth and moisture, living ordinarily a few hours or days, but subject to culture which will prolong it even for many years. On the other hand the germ will die almost immediately upon exposure to sunlight. It may attack almost any part of the body, but for practical purposes is almost confined to the lungs, which it reaches generally through breathing germs from diseased persons. It has been said that the space limit of com-

munication is 3 feet, which must refer to germs from breath or cough of a patient, for on the other hand witnesses testify that it may be carried by wind or water, which would make its zone depend upon the current, whether of wind or water.

The treatment of cases depends upon the stage attained. Curable cases are best handled in sanatoriums at a distance from the coast, preferably in high and dry places, where sunshine, fresh air, and amusement will finally aid in the restoration of the patient to health. Cases whose only termination is death, on the other hand, should be treated in hospitals near to cities, so as to have the benefit of water, light, sewerage, and other incidents of civic life, including visits from friends and physicians. In the case at bar there seems to be contemplated at first only the treatment of advanced cases, who will be either confined to bed or capable of walking only a short distance. Several houses are contemplated with rooms for patients, and also some for administrative purposes, extending over a very few acres and inclosed by a fence which will limit the movement of the patients well within the 35 acres of land now purchased. The plans, so far as matured, seem to be well thought out. There is, of course, no guaranty that the legislature will continue to appropriate the necessary funds for the maintenance of the institution, and it seems to be a matter of public knowledge that public institutions in Porto Rico, particularly those connected with health, have suffered in the past from the lack of sufficient appropriation. It is not necessary to determine that this is from any improper motive. It may well be that the multitude of calls upon the Insular treasury do not admit of everything being done that would be desired.

A condition peculiar to Porto Rico, and which makes prec-

edents from the American continent of doubtful value, is the prevalence here of the trade winds. The trade wind, according to the testimony, blows almost steadily from the east except in periods marked specially by the months of May and September, and has more volume daily between 1 and 3 o'clock. So important is this that it may be said life in the tropics for civilized man without the trade wind would be almost impossible, and it must be taken into account as one of the essentials to life, not to say progress, in Porto Rico. This is not true upon the mainland which presents entirely different conditions. The velocity of the wind is here given as 10 to 20 miles an hour, except, of course, in time of storm. Dust may be and is carried by this wind half a mile or more. The adjacent land of plaintiff Bacon to the west is within two or three hundred feet of the center of the tract in question where the authorities propose to establish the tuberculosis hospital, and well within the range of dust and other influences from the proposed hospital.

Another element of the case is that connected with drainage, and this concerns more especially the plaintiff Scoville. Across the Carretera or main road to the north is the canning factory of Scoville & Company, in which plaintiff Scoville owns the controlling interest, and is lessee, and therefore the person mainly interested. The well from which the water is taken for the purposes of this factory is within a few feet of the drain which heads near the proposed hospital in question, and the lie of the land would not readily allow any other disposition of the drainage water. Physicians who testified are divided as to the possibility of contamination. Some say that it is physically impossible for germs to get from the drainage arroyo into the well, while others admit the possibility.

Scoville v. Soler.

The principal, if not sole, means of infection, is supposed to be through the sputum of the patient, which contains the living germs. There is no variation in the germ when active. The only difference between the curable and incurable cases is that in the advanced stages the germs are much more numerous and therefore the patient is more dangerous. The exact method of infection is unknown, and it is only fair to believe that medical theories in this matter are subject to future correction, as in the case of yellow fever and other diseases. It is supposed that the germs are ever with us, and only become malignant when a person becomes weakened in certain particulars not fully known. Germs may be carried in the clothing for thousands of miles. Possibly the most frequent method of dissemination is through the house fly, and no reason appears why flies cannot be carried by the wind a much greater distance than between the proposed hospital and the buildings of plaintiffs. The superintendent of the old tuberculosis hospital thought there was no difficulty about controlling advanced patients, while the present head of the municipal hospital declared that Porto Ricans of the lower classes are frequently filthy and utterly beyond control. In such difference between doctors of equally long experience it is best to be on the safe side, particularly in view of the prevalence of the spitting habit, seen on all sides so as to be almost a matter of judicial knowledge. It has been called a national habit of Spain.

7. The law of the case is based principally upon the question of nuisance. Every citizen holds his property subject to the exercise of the police power, and police regulations, although they disturb the private enjoyment, are not unconstitutional, although no provision is made for compensation. 1 Dill. Mun.

Corp. § 212. There is no difference in principle between the right of a city to establish and maintain a smallpox hospital and to erect jails and fire-engine houses, although there would be a different kind of selection and oversight necessary in the different cases. Frazer v. Chicago, 186 Ill. 480, 51 L.R.A. 306, 78 Am. St. Rep. 296, 57 N. E. 1055, 1058. If the apparent results of the conduct complained of are such as to put in jeopardy the health or property of adjacent citizens so that they suffer a peculiar damage additional to that of the general public, injunction is allowed. An instructive Maryland case is Baltimore v. Fairfield Improv. Co. 87 Md. 252, 40 L.R.A. 494, 67 Am. St. Rep. 344, 39 Atl. 1081. Acts done by authority of law are legalized nuisances, because they rent upon the paramount power of the legislature to secure the greatest good to the greatest number. Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. ed. 1036. The state in the exercise of police power may destroy private property contaminated with disease, but this does not authorize destruction or unnecessary damage of property which is not dangerous to public health. The public power to erect hospitals is subject to the equally well-defined right of the individual to possess his property without molestation by unnecessary nuisance, and health powers given by statute are not to be used to the peril of the lives of other citizens, but reasonably. In the case at bar there is no doubt of the right of the commissioner to build a hospital, but this does not mean he may build it anywhere and everywhere. In the Maryland case a leper was installed upon a lot adjacent to plaintiff's property, and this act was enjoined. The fact that on the other end of the lot had once been a pesthouse was changed by its abandonment and the improvement of the

adjacent property. So in Anable v. Montgomery County, from Indiana, it is held that it cannot be said, no matter how comprehensive the power, that a municipality might locate a pesthouse in the midst of a thickly settled neighborhood, or that the power to erect a pesthouse carries with it the further power to locate it where it will injure others. If a nuisance results from carrying out legislative direction, it must be shown either that the terms of the statute are imperative or that it cannot be carried out except by infringing private rights. 34 Ind. App. 72, 107 Am. St. Rep. 173, 71 N. E. 272. It is to be presumed that the legislature intended that discretion should be exercised in strict conformity with private rights. Hill v. Metropolitan Asylum Dist. L. R. 4 Q. B. Div. 433.

The exact case of tuberculosis hospital has been passed upon in the state of Washington. While recognizing that each case has to be judged by itself, it is held that the maintenance of a tuberculosis sanatorium in a residential section of a city, robbing adjoining owners of the pleasure of their homes and materially depreciating land values, is a nuisance, although it is caused by fear existing only in the imagination. Everett v. Paschall, 61 Wash. 47, 31 L.R.A.(N.S.) 827, 111 Pac. 879, Ann. Cas. 1912B, 1128.

It has been held by no less an authority than Lord Hardwicke that the fears of mankind, though they may be reasonable ones, will not create a nuisance. Anonymous, 3 Atk. 750, 26 Eng. Reprint, 1230. This, however, cannot be said to be the modern American rule. In Stotler v. Rochelle, from Kansas, it was held that the fear of cancer in the present state of knowledge is not unreasonable and may be a ground for injunctive

relief.   83 Kan. 86, 29 L.R.A.(N.S.) 49, 109 Pac. 788.   An. insane asylum has been found to destroy the value of property. Shepard v. Seattle, 59 Wash. 363, 40 L.R.A.(N.S.) 647, 109· Pac. 1067.   The question is not whether fear is founded in science, but whether it exists; not whether it is imaginary, but whether it is real in affecting the movements and conduct of men.   Such fears must be recognized by the courts like other emotions, for fear is perfectly legitimate and an emotion to which the bravest men are. subject.   A man is entitled to comfortable enjoyment of his home, and this is disturbed if it is subjected to fears as to the health of himself and family and danger to the value of his property.

8. In the case at bar there is shown to be a distinct fear on the part of plaintiffs in regard to the effect upon their health and business of the location of a tuberculosis hospital at the site chosen.   ·This fear is shown in the protest proved as an exhibit to the bill to be general in that neighborhood.   There is no showing on the other side, no petition for the establishment of the hospital at that site, and views to the contrary are only those of people who do not live there.   So far as shown, the views of the municipal authorities within whose jurisdiction lies all this property are opposed to the establishment of the hospital at this point.   The court cannot, of course, say where the hospital should be placed, but it is important that it should be provided as. soon as possible.   There is at least enough evidence in the case, and probably judicial knowledge so ˙far also, to show that there are many places in Porto Rico near cities and railroads which are just as accessible and available as the property at bar, without being in what is practically residence districts.   The property in question is not in a city,

Scoville v. Soler.

and is not residential in that sense; but is adjacent to a thickly settled village, on one of the main roads of Porto Rico, and beyond it are other villages. It is true that behind many of the residences not in the villages are fields of pineapples, grapefruit, or cane, but this is true of the beginning of all residential settlements, and there is no reason to suppose that residences are going to stop exactly at this spot. One of the plaintiffs and one of the defendants have begun platting their lands, although so far without obtaining the prices desired; but unless we are to hold that the prosperity of San Juan will go backwards, it must be held that the property in question will very shortly be residential in every sense of the word. Indeed, it is so now for all practical purposes. A district is residential, not because it is in town, but because it has residents. Pro tanto the health of a country is as much entitled to protection as that of the same number of people in a city.

While the evidence is conflicting, the balance is on the side of injury to property value as well as health. It shows that in all probability the market for the products of the fruit-packing house will be lessened, if not destroyed, for there is nothing of late years attracting more attention and care than the surroundings of factories of food. It may be doubted, products being equally good otherwise, whether anyone, not only in this case, but in any careful community, would prefer products from a site opposite a tuberculosis hospital, even if it were advertised on the package that the water used was not from the drainage of the hospital, but from a main extended to the neighborhood at the instance of the hospital.

On the other hand, the best informed of the witnesses testify that there will be a serious depreciation of the adjacent prop-

Scoville v. Soler.

erty, residential and business, and that this was true in regard to the former hospital at Seboruco until the property came into use for purposes involving destruction of the hospital. The evidence favorable to safety and values in case the hospital is placed near Sabana Llana is mainly that of physicians, and their sincerity cannot be questioned. But it goes too far for the present case. It is based upon adequate public appropriations and strict care in the administration of the institution; and no one can guarantee either prerequisite. If the neighborhood affected were composed solely of doctors, or the consumers of goods from the packing house were exclusively physicians, it may be the fear would not exist, and that value would not depreciate; but even then this would not be sure, and this kind of a neighborhood never can exist. We must deal with people of the average layman's knowledge, hopes, and fears. They were there before the hospital and must be protected in their reasonable rights of health and property.

The bill is not, perhaps could not be, specific as to whether the site was to be used for a sanatorium or a hospital. The defendant has elected the latter as the use to which it is to be put. It is conceded that a site so near the sea level would not be suitable for a sanatorium, but the injury to plaintiffs would be practically the same in either case. The patients are dangerous in the hospital because of the greater number of germs, and dangerous at a sanatorium because the patients go more about the grounds. The election by the defendant is not final; his plans are not fully developed. So that it would be better to have the remedy adequate for all circumstances, and not close the door to litigation as to hospital and leave it open as to sanatorium. There might be more testimony, but it seems

clear it could not change the general result. The decree should run accordingly.

It follows, therefore, that plaintiff Vosburg must be struck out of the complaint, but that the two other plaintiffs, having separable interests, are entitled to relief, and the injunction heretofore issued pendente lite is hereby modified so as to have no reference to the execution of a deed from defendants Hubbard to the people of Porto Rico, but remains in full force and effect so far as to prohibit the defendant Soler, his agents and representatives, from erecting upon the premises described in the bill any form of hospital, whether for cure of tuberculosis patients or for the care of those who are incurable.

It is so ordered.