[No. 2363.]

VERAGUTH v. THE CITY OF DENVER.

1. **Cities and Towns—Liability for Injuries—Governmental Functions.**

   A municipal corporation is not liable in damages for injuries caused by the failure or negligence of its officers in the exercise of governmental functions.

2. **Same—Failure to Require Ash-Pit.**

   An ordinance of a city requiring all owners of buildings to furnish a safe receptacle for ashes, and prohibiting the deposit of ashes anywhere except in such ash-pit, is public in its nature, and its enforcement by the officers of the city is a governmental function; and where the owner of a building failed to furnish an ash-pit, and hot ashes were deposited in an open hole dug in the ground on the premises, into which a child fell and was burned, the city is not liable in damages for the injury.

3. **Same—Nuisance.**

   An open ash-pit dug in the ground on inclosed private premises, is not a public nuisance so as to make the city liable in damages for injuries to a child, caused by falling into such pit and being burned.

*Error to the District Court of Arapahoe County.*

By the 26th subdivision of section 20, article II of the charter of the city of Denver, approved April 3, 1893 (Session Laws 1893, p. 131), the city council was empowered to prevent the deposit of ashes in unsafe places; and, by the 58th subdivision of the same section, to declare, prevent or abate nuisances on public or private property, and the cause thereof. By sections 62 and 66 of article III, it is made the duty of the mayor, the members of the city council, the chief of police, and all assistants and members of the police department of the city, at all times diligently and faithfully to enforce all such laws, ordinances and regulations, for the preservation of good order and the public welfare, as the city council might enact.

On the 1st day of October, 1898, the following ordinances of the city council were, and for a long time previously had been, in force:

"It shall be the duty of the owner of every building within the city of Denver, and of the agent having the same in charge, to furnish a close and secure metallic or earthen vessel, or brick or stone room or bin, as a receptacle for ashes; and it shall be the duty of such owner and agent, and also of every tenant and occupant of any building within the city, to remove the ashes from such receptacle when the same is filled. And no ashes (except at manufactories where ashes are used) shall be kept or deposited in any part of the city in anything other than such metallic or other earthen vessel, or stone or brick room or bin. Any person failing to comply with, or violating, any of the provisions of this section, shall be fined in any sum not less than ten nor more than one hundred dollars, and the additional sum of five dollars for every twenty-four hours of failure or refusal to supply such receptacle or remove such ashes after notice so to do from the chief, or assist-

ant chief engineer of the fire department, or any fire warden or police officer."

"Every act or thing, done or made, permitted, allowed or continued on any property, public or private, by any person or corporation, their agents or servants, detrimental to health, or to the damage or injury of any of the inhabitants of this city, and not hereinbefore specified, shall be deemed a nuisance."

On the 1st day of October, 1898, Charles H. Freund was, and had for a considerable time been, the owner of certain ground in the city of Denver, on which was a one and one-half story frame building, the upper part of which was occupied by Freund and his family, and the lower part by the parents of the plaintiff as tenants of Freund. Freund and his tenants failed to comply with the provisions of the ordinance concerning ashes. They provided no metallic or earthen vessel, or brick or stone room or bin, upon the premises, as a receptacle for ashes, but used a circular hole dug into the ground in the rear of the house, and within the lot belonging to Freund, about three feet in diameter, and two and one-half feet in depth, and caused the ashes produced by them respectively to be thrown into it. This hole was left uncovered. The lot was inclosed by a fence.

On the 1st day of October, 1898, the plaintiff, then a child one and one-half years of age, strayed from the rear door of the house and fell into the hole, which, at the time, was full of hot ashes; and before he could be rescued was severely burned, and sustained permanent injury. His mother and guardian, Emma E. Veraguth, brought this action in his behalf to recover from the city damages for the injury, alleging knowledge on its part of the existence of the hole and its contents, and of their dangerous character, and averring that, notwithstanding such knowledge, it negligently and wrongfully failed

to enforce its ordinance relating to ashes, or the law respecting nuisances, but negligently and wrongfully permitted the dangerous situation to remain. undisturbed. The testimony introduced by the plaintiff corresponded substantially with the allegations of the complaint, and was not contradicted in any material particular by the defendant's witnesses. A demurrer originally interposed to the complaint had been overruled; but when the evidence was concluded, the court reconsidered the ruling, and directed a verdict for the city. Such verdict was accordingly returned, and judgment entered upon it. The plaintiff brings error.

Mr. CLAY B. WHITFORD and Mr. HENRY E. MAY, for plaintiff in error.

Mr. H. M. ORAHOOD, Mr. H. L. RITTER, Mr. N. B. BACHTELL, Mr. H. A. LINDSLEY, district attorney, and Mr. SAMUEL W. BELFORD, for defendant in error.

THOMSON, P. J.

The only question which the record presents is whether, upon the facts alleged and proved, the city incurred a liability for the injury sustained by the plaintiff. The line of argument by which counsel seek to establish such liability, is that the charter invested the city with full power to enforce its ordinances, and charged certain of its officers with the duty of seeing that they were enforced; that the failure of those officers in the performance of their duty was imputable to the city as its own dereliction of duty; that, but for such dereliction, the injury would not have been sustained; and that in all cases a municipality, like a private corporation or individual, is answerable for the consequences of its negligence. The argument recognizes no distinction between the classes of powers conferred upon municipal cor-

porations; and, for a neglect in the exercise of any of their powers, would hold them to the same degree of responsibility, regardless of the nature of the power to be exercised. But a distinction nevertheless exists; and by that distinction the question, in a given case, of the liability of a municipality, is controlled. One class of its powers is of a public and general character, to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants; the other relates only to special or private corporate purposes, for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. In the former case its functions are political and governmental, and no liability attaches to it either for nonuser or misuser of a power; while in the latter, it stands upon the same footing with a private corporation, and will be held to the same responsibility with a private corporation for injuries resulting from its negligence.— Dillon on Munic. Corporations, § 974; *Hayes v. Oshkosh,* 33 Wis. 314; *Aldrich v. Tripp,* 11 R. I. 141; *Insurance Co. v. Keeseville,* 148 N. Y. 46; *Wagner v. Portland,* 40 Ore. 389.

The law as we have stated it is thoroughly established. The cases to which we have been referred in behalf of the plaintiff simply affirm the liability of the municipality for the neglect of a duty resting upon it in respect to its special or local interests; but in many of the opinions occasion is taken to distinguish between its public and private functions; and in our citations, we have made use chiefly of authorities furnished to us by plaintiff's counsel.

The question then is, what was the nature of the power exercised by the city in the enactment of the ordinance relating to the deposit of ashes? It is evident that the purpose of the ordinance, as

well as of the charter provision authorizing it, was
to furnish to the inhabitants of the city some meas-
ure of protection against fire. The ordinance is
public in its character. It has the public welfare
in view, and in no manner concerns the private
interests of the corporation. The power exercised
in its enactment was a political power of the state,
which was delegated by the charter to the munici-
pality. It is the same power in virtue of which
offenses are defined, and provision made for their
punishment, by the general laws. The ordinance
was, therefore, in its nature, strictly governmental,
and for any action or want of action with respect
to the ordinance, by the city or its officers, the cor-
poration is exempt from liability equally with the
state.

But it is sought to sustain this action upon
another ground, namely, that the ash-pit was a nui-
sance, and that the charter made it the duty of the
city to abate nuisances. We shall enter into no dis-
cussion of the question of the city's responsibility
with respect to nuisances, because, upon the record
before us, we do not find the question to be involved
in the case. The ash-pit as described by the wit-
nesses was not a nuisance within any definition of
the term. It was not shown that the public or indi-
viduals were suffering annoyance or injury from it.
The injury which was sustained was not one which
it was the design of the ordinance to prevent. The
pit was upon private inclosed ground, to which the
public had no right of access; and the danger which
attended it, as shown by the accident that occurred,
affected only the occupants of the premises, who,
owner and tenants, as the evidence abundantly
showed, were severally and equally responsible for
its existence. To constitute it a nuisance, it must, in
some manner, have injured or annoyed others in the

enjoyment of their legal rights. And the ordinance declaratory of nuisances was not intended to include it. It was not detrimental to health, and was not attended with damage or injury to any of the inhabitants of the city, within the meaning of the ordinance. The inhabitants to be protected were those whose rights might be affected through acts done by others than themselves—not the persons doing the acts. Moreover, this particular offense was the subject of a special ordinance prescribing a penalty for its commission. We agree with the trial court and affirm its judgment.                *Affirmed.*