CUSHMAN MOTOR WORKS, APPELLANT, v. CITY OF LINCOLN, APPELLEE.

FILED JANUARY 2, 1915. No. 17,855.

1. **Municipal Corporations: DUTIES: OBSTRUCTIONS IN STREETS.** Every municipal corporation is bound to use reasonable diligence to keep its streets free from obstruction. This duty cannot be evaded, suspended or cast upon another by any act of the municipal corporation.

2. ————: **OBSTRUCTIONS IN STREETS: CONSTRUCTION OF RAILROAD: LIABILITY.** Where a city grants to a railroad company the right to construct its road through the city and over and along its public streets, and such railroad company negligently constructs its roadbed and embankment in such manner as to obstruct the streets, or negligently fails to construct suitable and sufficient ditches, drains and culverts, made necessary by the construction of its road, to protect adjacent property from flood waters which should reasonably be anticipated, the city is liable to the same extent as if the negligent acts of the railroad company had been performed or omitted by its own servants; and the fact that the city in its grant to the railroad company provides that the railroad company shall hold the city harmless from all damages arising from the grant, and shall make all drainage that might be necessary by reason of the construction of its road and tracks, does not relieve the city from its liability; and one who, without fault or negligence on his part, suffers injury therefrom may recover from the city or the railroad company separately, or from both jointly.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*Burr, Greene & Greene,* for appellant.

*Fred C. Foster* and *D. H. McClenahan, contra.*

FAWCETT, J.

This action was instituted in the district court for Lancaster county, to recover damages alleged to have been caused to plaintiff's property by the flood waters of Antelope creek, on May 17, 1909, and August 29, 1910. From a verdict and judgment for defendant, plaintiff appeals.

It is alleged in the petition that the waters from these floods were dammed up and caused to flow over and upon plaintiff's shop near Twenty-first and N streets, in the city of Lincoln, by the negligent construction of the conduits on O and N streets, and the construction of the bridge, roadbed and embankment of the Chicago, Rock Island & Pacific Railway Company across Antelope creek in defendant city, all of which, it was alleged, caused the flood waters to overflow the banks of the creek and flood plaintiff's shop. The answer of defendant admits that it is a city of the second class, denies that it was negligent in the construction of its conduits, and alleges: That, if plaintiff was damaged, such damage was sustained by reason of its own negligence; that Antelope creek "has an extremely winding course, through a broad valley, flowing from the south and east; that the Chicago, Rock Island & Pacific Railway Company's right of way and railroad tracks cross said Antelope creek at different places, at which places said railroad company constructed and maintained railroad bridges, and at various places said right of way and railroad tracks run parallel with said Antelope channel; that said company has on each side of its right of way a ditch for drainage purposes, which extends to the Antelope creek and connects therewith at said bridges and other places along said right of way; that the grade or elevation of said railroad right of way, tracks and bed slopes to the northwest and decreases in elevation as it reaches and passes plaintiff's property, and that, on account of said bridges, ditches and cuts so made by said railroad company's connection with the Antelope creek, water was allowed to escape from the channel of the Antelope creek down said railroad company's tracks, thereby preventing said water from escaping by way of said Antelope channel, over which acts of said railroad company this defendant city had no control or authority whatever, nor did it contribute in any manner to the diverting or backing up of water by said railroad company or in flooding plaintiff's premises, and the said acts were the sole carelessness and negligence of said railroad company, and

not of this defendant city; that by reason of said fact, and the facts as hereinbefore alleged, plaintiff's premises are so located that they were flooded long before the said arches and conduits on N street were running full of water, and long before the banks of the Antelope channel were filled."

These allegations in defendant's answer amount to an admission that plaintiff's damage was caused by the negligent construction by the railroad company of its bridges, ditches and cuts, which prevented "said water from escaping by way of said Antelope channel." Defendant seeks to shield itself from liability by reason of the negligent construction of these bridges, ditches and cuts by alleging that the defendant city had no control or authority whatever over the railroad company or over its negligent acts. The trial court took this view of the law and instructed the jury as follows: "And you are instructed that, if you believe from the evidence that any flooding or injury done to the plaintiff was caused by the negligent construction of the said Rock Island Railway bridge, that would be negligence for which the city of Lincoln would be in nowise to blame, and could not be held responsible for in this lawsuit. You should consider the evidence as it may bear upon the question whether or not the plaintiff would have been flooded, but for such Rock Island Railway bridge, and, if so, to what extent." The giving of this instruction is prejudicial error for which the judgment must be reversed. Section 129, subd. LXI, art. I, ch. 13, Comp. St. 1909, in force at the time plaintiff received its damage, gave the city the power to regulate railroad crossings and do a number of other things, among which are: "To compel railways to conform tracks to grades at any time established, and if lengthwise in a public way to keep them level with street surface; to compel railways to keep streets open, construct and keep in repair ditches, drains, sewers and culverts along or under their right of way or tracks, and lay and maintain paving of their whole right of way on paved streets." In the light of this statute it was the duty of the city, when it per-

mitted the railroad company to pass over its streets and
through the city, to see that it did "construct and keep in
repair ditches, drains, sewers and culverts along or under
their right of way or tracks." This language of the stat-
ute, of course, means to construct and keep in repair suit-
able and sufficient ditches, drains, culverts, etc. If the
railroad company failed to construct sufficient drains,
ditches and culverts, it was the duty of the city to compel
it to do so, and a failure to perform that duty was negli-
gence on the part of the city. It alone had the power to
compel the company to do these things. Plaintiff could
not do it. The city could not enact an ordinance which
permitted the railroad company to pass through the city
and over its public streets, and thereby shift from its
shoulders to the shoulders of the railroad company the
duty which the city owed property owners in the vicinity
of its grant. That the city recognized this fact is shown
by the provisions in its several ordinances under which
this railroad company was given the right to run its road
through the city. See its ordinances passed March 29,
1892, April 12, 1892, June 7, 1892, July 12, 1892, August
16, 1892, and other ordinances passed in relation to this
matter, appearing at pages 443 to 448, both inclusive, in
its "General Revised and Consolidated Ordinances and
Special Ordinances of Lincoln, Nebraska. Published by
Authority of the Mayor and City Council 1908." In those
ordinances it is provided: "That said company shall hold
the city of Lincoln harmless from all damages arising
from this grant." And: "That said railway company
will make all drainage that may be necessary by reason of
the construction of its road and tracks and by closing of
said streets and alleys: And provided further, that by
the acceptance of the rights and privileges hereby granted,
the said railway company agrees to save and keep the said
city of Lincoln harmless from the payment of any costs,
damages, or expenses, growing out of the exercise of the
rights hereby conferred and granted, in favor of any per-
son whomsoever." It will be seen from an examination
of these ordinances that the city then recognized the fact

that in granting these privileges to the railroad company it was not relieving itself of the duties and obligations resting upon it to protect property owners from damage by reason of defective drainage, sewerage, etc., in the railroad company's work, and so it contracted with the railroad company that, in the event the city should be required to answer for damages to property owners by reason of the failure of the railroad company to properly construct its railroad, the city could compel the railroad company to reimburse it for such damage. It being alleged in defendant's answer, as well as shown by the evidence, that the negligent construction of the railroad company's railroad was responsible for, or at least contributed to, plaintiff's damage, the instruction above set out should not have been given. By that instruction one of plaintiff's material grounds of complaint was withdrawn from the jury. If the city, upon a full submission of all the material charges of negligence in the petition, is finally held liable on account of negligence on the part of the railroad company, as alleged, it can recoup its loss by requiring the company to make reimbursement in accordance with the terms of its grant. *Omaha Gas Co. v. City of South Omaha,* 71 Neb. 115. On the point that the city could not shift its responsibility to the railroad company, see *Russell v. Inhabitants of the Town of Columbia,* 74 Mo. 480, in which it is held: "A gas company, empowered by law to lay its gas pipes through the streets of a city with the consent of the city authorities, obtained such consent, agreeing on its part to leave the streets in good condition and not to allow the ditches it might dig to be left open longer than should be necessary to lay or repair the pipes. In the prosecution of its work the company opened a ditch in one of the streets, which, for want of pipe, was left open for several days. Whilst so exposed, plaintiff, passing at night, fell in and was hurt. Held, that the city, having given the company permission to occupy the street, was liable to the same extent as if the ditch had been opened by its own servants, i. e., without proof of notice; that the fact that the city had obtained from the

company an agreement for securing the safety of the streets did not do away with the city's liability, and that the plaintiff, if free from fault or negligence on her part, might recover for the injuries sustained, though she knew of the existence of the ditch when she went into the street."

In the light of the clear error above pointed out, we deem it unnecessary to consider any of the other points presented and discussed by counsel for plaintiff. The judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.

LETTON, J., not sitting.

BARNES, J., dissenting.

I am unable to concur in the majority opinion. The testimony in this case clearly shows that the Chicago, Rock Island & Pacific Railway Company had constructed a bridge across Antelope creek several blocks to the south and east of the plaintiff's premises; that the bridge was so constructed that the current of the creek flowed against the west abutment thereof; that it was so constructed as to properly carry off all ordinary flood water. It appears, however, that, when the floods came down the valley of Antelope creek, the height of the water was so great that it broke over the dike on the west and south side of the bridge, and a large part of the floods flowed down on the southwest side of the track along the ditches and borrow pits until it reached a point near plaintiff's premises, where that part of the flood was augmented by the waters which flowed north and east from Sixteenth street in said city, and that the flood waters then broke over the Rock Island tracks in an immense volume, and flowed into the plaintiff's shops to the depth of about three feet; that such condition existed for a considerable time before the conduits under O and N streets were filled up, and before the waters overflowed the channel of Antelope creek.

The defendant also introduced testimony which showed that, when the flood of May 17, 1909, occurred, there was

an unusual and excessive rainfall, which amounted to about 4.7 of an inch within a very short time, and, when the flood waters came down the Antelope creek valley from the south, there was a wall of water, which the witnesses described as something over 3 feet in height, which covered the whole valley. Defendant's testimony also showed that, when the flood of August 29, 1910, occurred, there was a rainfall of something over 8 inches over the area drained by the Antelope creek, and that the floods in question were the greatest and highest ever known to occur in the Antelope valley within the memory and experience of the oldest inhabitants of the city. The evidence shows that the railroad bridge above mentioned was not erected on any street, highway or public ground of the city, but was constructed on private property purchased or condemned by the Rock Island Railway Company, and was erected under the supervision of the sanitary drainage district. The city, therefore, had no jurisdiction over the matter, and should not be held liable for the negligent construction of the bridge, if such construction was negligent.

In constructing and operating the railroad, the company was acting for itself, and not for the city. It was no more the city's agent than is an individual licensed by ordinance or resolution to engage in some legitimate private business requiring such license or authority. If the railroad company disobeyed the law, or was negligent in building or operating its road, the city was no more responsible therefor than it would be for the tort of a private individual in the pursuit of his business. *City of Denver v. Bayer*, 7 Colo. 113; *Bancroft v. City of San Diego*, 120 Cal. 432; *Murphy v. City of Chicago*, 29 Ill. 279; *Purinton v. Somerset*, 174 Mass. 556. The evidence on this question alone was sufficient to authorize the jury to return a verdict for the defendant.

Again, the jury were correctly instructed that, if the floods of which the plaintiff complained, were caused by such unusual and extraordinary rainfalls as amounted in law to an act of God, then they should find for the defend-

ant. As I view the evidence in this case, it was not only amply sufficient, but as a matter of fact required the jury to return a verdict in favor of the city.

For the foregoing reasons, I am of opinion that the judgment of the district court should be affirmed.

HAMER, J., concurs in this dissent.