MAYNE ET AL. v. CURTIS, RECEIVER, ET AL.

[No. 10,097.    Filed March 31, 1920.    Rehearing denied June 18,
1920.    Transfer denied October 13, 1920.]

MUNICIPAL CORPORATIONS. — Governmental Powers. — Failure to
Exercise Not Ground for Action.—The failure of a city to re-
quire a railroad to which it had given a franchise to use a
street, to install a bumper block at the end of its tracks or
a derail where it entered the street, is not actionable for dam-
ages occurring thereby to property owners, since a municipal-
ity is not liable for failure to exercise powers of a purely gov-
ernmental nature.

From Huntington Circuit Court; Samuel E. Cook,
Judge.

Action by William A. Mayne and another against
John C. Curtis as receiver of the Cincinnati, Bluffton
and Chicago Railroad Company and the City of Hunt-
ington.   From a judgment for the city, the plaintiffs
appeal.   Affirmed.

S. M. Sayler and C. W. Watkins, for appellants.
Milo Feightner and Sumner Kenner, for appellees.

MCMAHAN, J.—This is an action by the appellants
against John C. Curtis, receiver of the Cincinnati, Bluff-
ton and Chicago Railroad Company and the city of
Huntington.   The complaint in substance alleges: That
on December 12, 1913, the appellants as partners owned
and conducted a grocery store on the west side of Jeffer-
son street in the city of Huntington; that John C. Curtis
had been appointed receiver of said railroad company
by the circuit court of Huntington county, and as such
was operating the railroad from the city of Huntington
in Huntington county to the city of Portland in Jay
county with gasoline and electric power for passenger
trains and steam power for freight trains; that the ap-
pellee city in July, 1912, granted said railroad company

a franchise to use Front street in said city from a point fifty feet east of the west end of Front street at Jefferson street to a point near the Chicago and Erie Railroad for the use of its passenger trains; that said company by its receiver accepted said franchise and built its railroad on Front street from said point near Jefferson street to a point near the Chicago and Erie right of way, where it left Front street and connected with its system of railroad and also with the tracks which led to its roundhouse, machine shops and coal docks in said city. Section 9 of said franchise provided that:

"The City of Huntington reserves the right to make from time to time such reasonable regulations with regard to speed of trains, and cars and such other safety appliances and requirements that may be reasonable, and the said grantee hereby agrees to abide by such regulations as fully as if the same were part of this franchise."

The franchise was in force December 12, 1913; that it was the duty of the appellee city to keep its streets safe so that no damage should occur to the public or to the occupants of abutting property on said Front street. That neither the railroad nor the city constructed any bumping block at the end of the railroad near Jefferson street to protect the public and occupants of abutting property against any accident or damage by reason of the careless management and running of cars on said railroad track or by reason of any condition in the running of trains or locomotives on said track, which should be beyond the control of said railroad company by reason of any defect in machinery or other causes; that, although the appellee city had notice of the failure of the said railroad to install and maintain such bumping block, it negligently failed to require the railroad to erect and maintain such bumping block.

It is also alleged that no derail was installed or main-

tained by said railroad company or by said city or required by said city to be installed and maintained by said railroad company where the railroad track entered upon Front street; that the appellee city had notice of such failure to install such derail from July 26, 1912, and said city negligently failed to require the railroad company to install and maintain such derail.

It is then averred that appellants' grocery store was on the west side of Jefferson street, directly opposite the end of said railroad track, Front street ending in and not crossing Jefferson street so that the west side of Jefferson street at said point was occupied with business buildings; that on December 12, 1913, said railroad company negligently permitted a locomotive engine, fired up and carrying a great force of steam, to get away from the coal dock near the roundhouse without an engineer or fireman being in charge thereof, and to run with great speed over and along said railroad track in Front street till the same left the end of said railroad track and ran across Jefferson street and into the building occupied by appellants in their said business to their damage.

The error assigned is that the court erred in sustaining the demurrer of the city of Huntington to the complaint.

The specific charge of negligence against the railroad company is that it failed to erect and maintain a bumping block at the end of its track, and to install and maintain a derail near the point where its railroad track entered upon Front street, and that it negligently permitted a locomotive to get away from the coal dock. The negligence charged against the city of Huntington is that it negligently failed to require the railroad company to erect and maintain such bumping block and derail. It is appellants' contention that the failure of the city of Huntington to safeguard the public and own-

ers of abutting property was the neglect to perform an administrative duty for which it is liable. Appellee city contends that the negligence about which complaint is made is the failure to perform a governmental function and that it is not liable for such failure. The authorities cited by appellants, with the exception of *Cushman Motor Works* v. *City of Lincoln* (1915), 97 Nebr. 519, 150 N. W. 821, are not in point.

In *City of Astoria* v. *Astoria, etc., R. Co.* (1913), 67 Ore. 538, 136 Pac. 645, 49 L. R. A. (N. S.) 404, the city filed a complaint to recover over from the railway company the amount of a judgment recovered by a traveler on a public street in an action against the city. The complaint against the city was founded upon the failure of the city to maintain the street where the accident occurred in a reasonably safe condition for travel. There was a judgment against the city and, after having paid the same, it began an action against the railroad company. From the complaint against the railroad it appears that active negligence was charged against the railroad in creating a dangerous condition of the street, while the city was charged with the passive negligence of permitting the street to remain in an unsafe condition. It was there held that the efficient and primary cause of the accident was the negligence of the railroad company, the negligence of the city being constructive rather than actual, and that the railroad was liable over to the city. The court stated the general rule to be that a city is required to keep its streets in a reasonably safe condition for travel.

In *City of Hammond* v. *Jahnke* (1912), 178 Ind. 177, 99 N. E. 39, the theory of the complaint was that the city and the railroad company jointly constructed and maintained the crossing in question, and had negligently permitted the same to become and remain out of repair; that the city knew of said condition and the danger aris-

ing therefrom, and had negligently and carelessly failed to repair the same. The city was there held liable, not because of its failure to require the railroad company to construct its road so as not to interfere with the free use of the street, but upon the theory that it was the duty of the city to exercise reasonable care to keep its streets in a reasonably safe condition for travel.

In *Cushman Motor Works* v. *City of Lincoln, supra,* a railroad company, in constructing its railroad through the city, had erected on its private right of way, and on lands not owned and controlled by the city, certain bridges and abutments in such a manner as to cause the water from a creek to overflow and damage property of appellant. The statutes of Nebraska gave the city the power to compel railways to construct and keep in repair sewers and culverts under and along its right of way or tracks, and it was held by a divided court that: "If the railroad company failed to construct sufficient drains, ditches and culverts, it was the duty of the city to compel it to do so, and a failure to perform that duty was negligence on the part of the city." It is clear to us that the failure of the city to require the railroad to remedy the alleged defects was the failure to perform a governmental duty, and that the decision of the Nebraska court is not in harmony with the decisions of other courts upon that subject. We do not and cannot see our way clear to follow it. The failure of the city of Huntington in the instant case to require the railroad company to install a derail as alleged in the complaint was a failure to perform a governmental duty for which no action lies. Not only is the same true in so far as the bumping block is concerned, but, if the city had required the railroad company to have placed a bumping block in the center of the street or had placed such block there itself, such bumping block would have been a public nuisance, and the city would have been

liable to any one who without fault was injured thereby. *City of Mt. Vernon* v. *Hoehn* (1899), 22 Ind. App. 282, 53 N. E. 654.

It is uniformly held that a city is not liable for a failure to exercise powers of a purely governmental character. It is not liable for failure to provide adequate appliance for extinguishing fires, nor for a failure to furnish sufficient police force, nor for a failure to enact proper ordinances, nor for failure properly to enforce the laws of the state or ordinances of the city enacted for the protection of the lives and property of the citizens. Such powers are governmental and discretionary, and failure to exercise them cannot be made the basis of an action for damages. It has accordingly been held that a city is not liable for damages caused by persons while making use of the streets for illegal and unauthorized purposes. *Moore* v. *City of Bloomington* (1912), 51 Ind. App. 145, 95 N. E. 374.

Unless a right of action is given by statute, municipal corporations are not liable to individuals for neglect to perform, or negligence in performing, duties which are governmental in their character, and including generally all duties extended or imposed upon them by law, solely for the public benefit. The Supreme Court of Missouri in *Murtaugh* v. *St. Louis* (1869), 44 Mo. 479, stated the doctrine as follows: "When the acts or omissions complained of were done or omitted in the exercise of a corporation franchise conferred upon the corporation for the public good, and not for private corporate advantage, then the corporation is not liable for the consequences of such acts or omissions on the part of its officers and servants."

The rules as to municipal liability for negligence in regard to corporate duties, and nonliability for negligence in regard to governmental duties, are elementary. The only difficulty is in their application, it often being

difficult to determine in a particular case whether the duty involved is a governmental or corporate one, that is, whether the injury complained of is the result of the failure to exercise, or the negligent exercise or performance of, a ministerial and private power or duty. A municipal corporation possesses two kinds of powers— one governmental and public and, to the extent they are held and exercised, is clothed with sovereignty; the other private and, to the extent they are held and exercised, is a legal individual. The former are given and used for public purposes; the latter for private purposes. While in the exercise of the former the corporation is a municipal government, and while in the exercise of the latter it is a corporate legal individual. 6 McQuillin, Mun. Corp. §2625.

The distinction is thus stated by Judge Thompson in *Veraguth* v. *City of Denver* (1904), 19 Colo. App. 473, 76 Pac. 539: "One class of its powers is of a public and general character, to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants; the other relates only to special or private corporate purposes, for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. In the former case its functions are political and governmental, and no liability attached to it either for nonuser or misuser of a power; while in the latter, it stands upon the same footing with a private corporation, and will be held to the same responsibility with a private corporation for injuries resulting from its negligence." See, also, *City of Denver* v. *Davis* (1906), 37 Colo. 370, 86 Pac. 1027, 6 L. R. A. (N. S.) 1013, 119 Am. St. 293, 11 Ann. Cas. 187; *Jones* v. *Williamsburg* (1900), 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294.

There are some duties, the nature of which as gov-

ernmental is too well settled to be disputed, such as the establishment and maintenance of schools, hospitals, poor houses, fire departments, police departments, jails, workhouses, police stations and the like. In fact, duties connected with the preservation of the peace or health, or the prevention of the destruction of property by fire, are all governmental without question.

"The law is well settled that the police regulations of a municipality are not made or enforced in the interest of the local corporation in its private capacity but in the interests of the public, and that a municipal corporation is not liable for the acts of its officers *in attempting to enforce police regulations*. This applies not only to policemen but to any other officers including health officers and the like, who may attempt to enforce police regulations. And police regulations include the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public, and all persons officially charged with the execution and enforcement of such police ordinances and regulations are, *quoad hoc*, police officers." 6 McQuillin, Mun. Corp. §2630.

The term "police power" is here used in its broad sense as extending to all matters affecting the peace, order, health, morals, convenience, comfort and safety of the public. It was held in *McFadden* v. *Town of Jewell* (1903), 119 Iowa 321, 93 N. W. 302, 60 L. R. A. 401, 97 Am. St. 321, that where a municipality, in the exercise of its police power, employs a person to cut weeds and grass in an alley, the municipality is not liable for his negligence in operating the mower. Nor is there any liability for failure to enforce an ordinance as to storing inflammable oil. *Roberts & Co.* v. *City of Cincinnati* (1874), 5 Ohio. Dec. 361. The city, in granting a franchise to a street railway company, acts in a purely

governmental capacity. *Edson* v. *Olathe* (1909), 81 Kan. 328, 105 Pac. 521, 36 L. R. A. (N. S.) 861.

The use of the street by the railroad company was a lawful one, and did not make the street intrinsically dangerous. As the use was neither dangerous nor unlawful, the city was not bound to keep constant watch over the railroad company to see that it did not violate the law. It had a right within reasonable limits to presume that the employes of the railroad company would do their work in a lawful manner. It was not bound to anticipate negligence on the part of such employes. *City of Warsaw* v. *Dunlap* (1887), 112 Ind. 576, 11 N. E. 623, 14 N. E. 568. We must also keep in mind the fact that the franchise was for the operation of passenger cars by gasoline or electric power. The railroad company had no right under the franchise to run freight cars or locomotives over the line in Front street.

The duty which a city, in exercising control and supervision over its streets, owes to an abutting property owner is analagous to the duty which an individual landowner owes to the premises of his neighbor. Under this rule the city in this case would only be liable for damages to an abutting owner if the facts alleged in the complaint warranted the inference that the failure of the city to erect the bumping block or derail amounted to a wilful, wanton or negligent disregard of the rights of the appellants. Before there can be any negligence on the part of the city, it must appear from the allegations of the complaint that the street was in a dangerous condition, and that the city should have anticipated the danger to the property of appellants as a consequence of the failure on its part to erect and maintain the bumper block or derail. *Johnson Co.* v. *Philadelphia* (1912), 236 Pa. 510, 84 Atl. 1014, 42 L. R. A. (N. S.) 512, Ann. Cas. 1914A 68.

We hold that the city of Huntington, in granting the

franchise to the railroad, acted in a purely governmental capacity.   It sought to promote the general welfare and nothing else.   Its failure to require the railroad to place a bumper block or derail, as alleged in the complaint, was the failure to perform a governmental act.

There was no error in sustaining the demurrer to the complaint.   Judgment affirmed.