Kinkape, J.
 

 This is an aetion to recover damages for injuries received in a collision by two automobiles, both touring cars — one a Buick and the other a Ford. The accident occurred October 28, 19Í9, about 7 o’clock in the evening, on the north side of East Bridge street, in the city of Elyria, Ohio, and near to the east side of the overhead railroad bridge across that street. There were two persons in each car in addition to the driver. Grace L. Meacham, the plaintiff in the trial court, was riding in the Buick car, and that car was being driven by her brother, who was a joint owner of the car with her. The third person in the car was the wife of the driver; the two ladies occupying the rear seat. The Ford car was being driven by its owner, the defendant B. W. Baird. There were two boys aged, at the time of the trial, 12 and 15 years, respectively, occupying the back seat of the Ford car. The collision demolished the rear half of thé Buick car. The greater part of the damage was to the right side of the ear, and was occasioned by the car coming
 
 *140
 
 in contact at the time of the collision with an iron pier of the overhead railroad bridge. The front end of the Ford oar came in contact with the left side of the Buick, a trifle to the rear of the center. The collision broke the right front wheel of the Ford car entirely off, and knocked all of the spokes of the left front wheel out, thereby dropping the front of the body of the Ford to the pavement. Other parts near the front of the Ford car were otherwise damaged.
 

 Shortly prior to the accident the Bnick car was moving westerly on the north side of Bridge street, and the Ford was moving easterly on the south half of Bridge street. The collision occurred when the driver of the Ford car made a left-hand turn across Bridge street to the north, for the purpose of going north on East River street, which began at the north line of Bridge street at a point near to the east side of the overhead railroad bridge. By the collision Mrs. Meacham received injuries which were serious in the extreme, including the total permanent loss of the sight of one eye and the permanent impairment of the sight of the other eye, to such an extent as that at the time of the trial she was only able to distinguish between light and darkness, and was not able to indentify by sight persons well known to her, even though they were standing near her. The injury to this eye is progressive in character, and in all probability, as shown by the evidence, will soon result in total permanent loss of vision.
 

 Mrs. Meacham brought an action in the court of common pleas of 'Cuyahoga county against the city of Elyria, the Lake Shore & Michigan ’South
 
 *141
 
 •ern Railroad Company, the New York Central Railroad Company, the Director General of Railroads, and B. W. Baird. No service was ever made on the Director General of Railroads, and during the trial, by the consent of all parties, the court dismissed from the ease the Lake Shore & Michigan Southern Railroad Company. She averred that the joint negligence of the defendants was the direct and proximate cause of her injuries, and prayed judgment against all of the defendants in the sum of $200,000.
 

 The defendants, other than Baird, who filed no pleading in the case, by demurrers, and later by answers, raised the question of misjoinder of parties defendant and also the question of the sufficiency of plaintiff’s petition. The answers of these defendants denied all acts, of negligence and averred contributory negligence on the part of Mrs. Meacham; and the answer of the New York-Central Railroad Company presented the further defense that, at the time of the accident, the railroad property involved was in the sole and exclusive possession and control of the federal government.
 

 These questions were again urged by the same defendants at the beginning of the trial by motions to exclude all evidence, and later, at the close of the plaintiff’s case and at the close of all the evidence, by motions for directed verdicts in favor of the defendants, and also by requests to charge. Th<» rulings of the trial judge upon these questions so raised were adverse to the defendants, and exceptions were saved.
 

 The jury returned a verdict in favor of the
 
 *142
 
 plaintiff and against the defendants, other than Baird, for $50,000, and also a verdict in favor of Baird and against the plaintiff, for costs incurred by Baird. Motions for new trial were overruled, and judgments entered upon these verdicts.
 

 The defendants, other than Baird, prosecuted error to the Court of Appeals. That court unanimously reversed the judgment against the New York Central Railroad Company, and entered final judgment in its favor, but affirmed the judgment against the city of Elyria. The city of Elyria prosecutes error to this court, naming the plaintiff, the New York Central Railroad Company, and B. W. Baird, as defendants in error. The city assigns many grounds of error. In the view we, take of this case, we deem it unnecessary to set out all these alleged grounds of error in detail.
 

 We think counsel for plaintiff entertained several untenable theories not only in the drawing of plaintiff’s petition, but throughout the trial of the case, which were largely concurred in by the trial judge, and which no doubt account for many of the errors that are found in the record. In the first place, it seems to have been the view of counsel that every one in any way connected with the erection of the overhead railroad bridge, said to have been the cause of the accident, must not only be jointly liable as between themselves and the plaintiff, but that they must also be jointly liable to the plaintiff with Baird, the driver of the Ford car. While the acts of these people are somewhat related they fall very far short of being joint wrongs.
 

 
 *143
 
 In the next place, it seems to have .been the theory of plaintiff’s counsel, and of the trial judge as well, that the city and the railroad company were without authority to place any piers in the street, in view of the fact that it was practicable to have constructed the overhead bridge without piers, and that necessarily the placing of piers in the street constituted a nuisance and a violation of the legal duty of the city to keep the street open, in repair, and free from nuisance, and counsel seem also to have gone forward upon the theory that the jury was the sole judge of whether these piers in the street constituted a nuisance; and, if the jury so found, that must of necessity establish the liability of the city and the railroad company to the plaintiff for placing the piers there. The trial court charged the jury to this same effect, and under the charge of the court it is not surprising that the jury found in favor of the plaintiff and against the city and. the railroad company.
 

 Several years prior to the time of this accident the city determined that it was necessary for the safety of public travel to cause a separation of the grades of East Bridge street and East Biver street from the grade of the railroad tracks that crossed these streets. As a first step in effecting this change of grade, the city duly vacated that portion of East River street that fell between the north and south boundary lines of Bridge street, and changed somewhat the location of the segregated parts of East River street. Pursuant to the plan duly adopted by the city and concurred in by the railroad company, the grade of the
 
 *144
 
 railroad tracks was raised and the grade of the streets lowered, so that vehicular travel upon the streets might pass under the railroad tracks. Bridge street was 66 feet in width, and the grade of the entire street was lowered, as stated.
 

 We have no concern with any part of Biver street except that part beginning, after the improvement, at the north line of Bridge street, and running in a northerly direction. This part of Biver street joined Bridge street at a point very near to the east side of the overhead railroad bridge which was constructed. The paved portion of Biver street was 33 feet between curbs. There was a sidewalk 10 feet wide on both the north and the south sides of Bridge street as it passed under the overhead bridge. On both the north and south lines of Bridge street, cement walls or abutments were constructed, sustaining the raised railroad embankment, and supporting the overhead structure as well. The overhead railroad bridge did not cross Bridge street at right angles. There were three rows of five iron piers placed in the street as supports for the overhead railroad bridge. These piers were about 15 inches in diameter, and were about 23 feet apart, measured on the center line of Bridge street. The south row of piers was placed within the sidewalk line and near to the curb. The north row of piers was also placed within the north sidewalk line and near to the curb. The third row of piers was placed on the center line of Bridge street, being a single pier under the west side of the bridge, another single pier under the east side of the bridge, and three twin piers between these two. The piers
 
 *145
 
 of each twin, pier were very close together. There was a double street car track passing under the bridge, one track south of the center row of piers and the other north of that row of piers; the tracks being as close to the center line of piers as was reasonably practicable, taking into account the use of the same by interurban cars. There was a roadway 23 feet in width on each side of the center line of piers. The roadway in the south half of the street was used for vehicular travel and interurban cars going east, and the roadway on the north half of the street was used for vehicular travel and street cars going west. The center line of Eiver street if extended to the center line of Bridge street would fall about 12% feet east of the east pier of the center row of piers, hut would not at that point form a right angle with the center line of Bridge street. A line drawn from the point where the center line of Eiver street intersects the north line of Bridge street to the center line of Bridge street, in such way as to form a right angle with the center line of Bridge street, would fall a very short distance east of the east pier in the center row.
 

 At the time of this accident an ordinance of the city of Elyria duly passed, provided as follows:
 

 “‘Vehicles turning to the left into another street shall pass to the right of and beyond the center of the street intersection before turning.”
 

 The same ordinance further provided:
 

 “No vehicles shall cross any main thoroughfare or make any turn thereon at a greater speed than one-half the legal speed limit upon such thoroughfare. ’ ’
 

 
 *146
 
 Another ordinance of the city, in full force at that time, provided as follows:
 

 “No person shall operate, drive or propel * * * any * * * automobile * * * at a speed or in a manner so as to endanger or to be likely to endanger the life or limb or property of any person, and in no event shall any such vehicle be operated at a greater speed than eight (8) miles per hour in the congested districts of the City of Elyria, Ohio, nor more than fifteen (15) miles per hour in other portions of said city.”
 

 The portion of East Bridge street in question in this case was within the congested district.
 

 The plaintiff alleged in her petition that the defendants, other than Baird, were guilty of negligence in the construction of this overhead bridge, in so far as they determined to and did put piers in the street for the support of the bridge. She further charged that these piers were an obstruction to the view of travelers upon the highway of what was passing on the other side of the center piers in the opposite direction, and averred further that the spaces formed by the placing of five piers in the center, as stated, constituted a danger to public travel, and in fact rendered the situation more dangerous to vehicular travel upon the street than it was prior to the change of grades.
 

 In the petition of plaintiff, the defendant Baird was charged with the grossest negligence in driving his car at the time of this collision. It is there averred that he was driving at excessive speed, to-wit, at the rate of 25 miles an hour; that he failed to keep a lookout or make any observation
 
 *147
 
 with respect to the approach of any other motor vehicle going in the opposite direction; that he neglected to warn drivers of vehicles approaching in the opposite direction by sounding his horn or otherwise; that he drove between the columns into the north half of the street on a left-hand turn without having his automobile under control; that he failed to have the front end of his automobile adequately illuminated as required by law. The petition further averred that after he saw, er by the exercise of ordinary care should have seen, the presence and approach of the Buick car, he neglected to stop his automobile or abate its speed so as to avoid the collision.
 

 The plaintiff offered no proof to sustain any of these charges of negligence against Baird, except that he cut the comer by driving between the piers instead of going around to the east of the intersection point of the center line of the street.
 

 Plaintiff offered evidence tending to prove that the Buick car, at the time of the accident, was moving at a rate of only 7 or 8 miles an hour, and was traveling on a line close to the north curb of the street.
 

 Defendants’ evidence tended to show a very much higher rate of speed of the Buick car; some witnesses placing it as high as 30 miles an hour or more.
 

 There is no dispute about Baird making the left-hand turn without going around the intersection point on the right. The very great weight of the evidence is that he turned between the east pier and the. one next west thereto, although the driver of the Buick car and his sister both testified
 
 *148
 
 that Baird out through the center column of piers between the piers second from the east and third from the east. The defense offered evidence tending to prove that Baird had his car under complete control as he drove between the piers, and that his car was moving not to exceed 4 or 5 miles an hour at the time the collision took place. Baird’s theory of the accident was that, while he was making his left turn between the piers, as the easiest and shortest method of reaching the entrance to River street, the Buick ear came from the east at a very high rate of speed and sideswiped the front end of the Ford car, thereby being thrown out of its line of travel and against one of the piers in the north row of piers.
 

 The printed record of this case presents about 900 pages, which we have examined with care, and we have also examined the numerous exhibits, including photographs that are attached to the typewritten bill of exceptions. We think it would serve no useful purpose to attempt in this opinion to discuss the evidence in detail, and therefore we wnll only state the conclusions which we have reached with respect to the issues in the case. We are entirely unable to comprehend how the city and the railroad company and Baird could be considered by the court as joint tort-feasors. The acts of these parties were somewhat related to the structure in question, which it is averred caused the accident, and in that sense it might be said that their torts were related to each other; but surely there is no foundation for the claim that they could be properly sued jointly on that account. Therefore, the demurrer for the misjoinder of the
 
 *149
 
 defendants should have been sustained. The property of the New York 'Central Railroad Company was completely and exclusively under federal control and management at the time of this accident, and, this being true, no cause of action in favor of the plaintiff and against the New York Central Railroad Company, growing, out of the accident that took place on October 28, 1919, could possibly arise. The demurrer of the railroad company to the petition, and the motion made by the railroad company to exclude all evidence, at the beginning of the trial, should have been granted; and, not having been granted, the motions for a directed verdict made by the railroad company should have been granted. This proposition is sustained by the very great weight of authority. The action of the Court of Appeals in dismissing the case of the plaintiff as to the New York Central Railroad Company and entering final judgment in favor of that company was correct and is affirmed.
 

 The law of Ohio specifically authorizes a city to compel a separation of grades between streets and steam railroads whenever the interests of the traveling public make such separation of grades necessary, and the statutes specifically authorize the placing of piers in the street to support the overhead railroad bridge carrying the railroad tracks. Every act of the city was pursuant to ordinances and resolutions duly passed by its council, and strictly in accord with the plans and specifications for the overhead structure as designed and built by the city and the railroad company. This manner of the separation of the grades at this point had the fullest and most delib
 
 *150
 
 erate consideration by the city, and tbe city was aided in reaching the ■ conclusions that it did after the fullest conferences with its civil engineers and the civil engineers of the railroad company as well. The matter of determining the character of structure to be placed in the street is committed to the council of the city, and, where the council acts advisedly, with competent civil engineers assisting, and goes forward in good faith and completes the overhead structure necessary to effect the separation of grades, it is not enough to establish liability against the city in favor of one who may be injured in connection with such structure to prove only that other engineers might, or probably would, have decided upon a different character of bridge than the one adopted in this case. It is common, knowledge that different engineers often differ in their judgment as to the form of a structure such as was erected in this case. Another set of civil engineers, equally as well qualified as those employed by the city and the railroad company in this case, might have drawn plans for a bridge of a different character to serve the purposes in hand. But, even so, evidence of that fact would not fasten a liability in favor of the plaintiff upon the city. And it was not a proper course for the trial court, after hearing evidence such as was produced in this case, to charge the jury in effect that it was for them. to determine whether the bridge in this case, and particularly the supporting piers underneath the same, constituted a nuisance in the public highway and furnished a basis for returning a verdict against the city in the event that they found the piers to be a nuisance.
 

 
 *151
 
 The evidence not only fails to prove that this structure constituted a nuisance in the public street, but the very great weight of the evidence clearly and definitely sustains the position that this bridge as erected was a suitable and proper structure to place there; and the evidence fully sustains the judgment of the council of the city of Elyria, its engineers, and the engineers of the railroad company, in the drawing and adoption of. the plans for this structure and in carrying them to completion by the city and the railroad company.
 

 It is said that the leaving of the wide spaces between the piers of the center row, without a bar or barricade of any kind, was an invitation to that portion of the traveling public going east on the south half of Bridge street, who wanted to go north on Biver street, to cut the corner and drive between the east pier and the one next west of it in reaching the entrance to Biver street. We are not able to see any merit in this claim, notwithstanding the fact that evidence was offered tending to show that about 90 per cent, of that portion of east-bound travel going north on Biver street did, in fact, cut the corner and drive between the piers. Every one who did so did it at his peril, and in flat violation of the positive direction contained in the ordinance of the city. The fact that as much as 90 per cent, of the drivers thus violated the ordinance has no effect whatever to invalidate the ordinance. Thousands of people violate the speed ordinance in every large city every day, but that does not affect the validity of an ordinance regulating speed. It is entirely self-evident that if
 
 *152
 
 Baird had observed the requirements of the ordinances and had made his left turn to the right of the intersecting point — that is to say, keeping the east pier on his left instead of cutting through between the piers — the accident could never have happened, because his course of travel would have carried him some distance behind the Buick car.
 

 An inspection of the photographs and other exhibits attached to the typewritten bill of exceptions should disclose to any one that this row of five piers was very little, if any, obstruction to the view of any driver of an automobile on the highway. However, giving the plaintiff the benefit of the broadest claims in this respect, the merit in the claim disappears when the indisputable fact appears that Baird had driven by three spaces and four piers before he undertook to cut the corner to the left. As he made this left-hand turn, there was only a single pier to the east of him. Surely the piers that he had driven past, and that were behind him, could not obscure his vision to the east, nor could any pier except the east single pier possibly operate to obscure in any way the vision of the driver of the Buick car as he was coming west. There is less than a hundred feet of distance, all told, between the east pier and the west pier in the center row.
 

 Upon the facts that are not at all in dispute in the evidence, we think it was the duty of the trial court to have sustained the motion of the city for a directed verdict in its behalf.
 

 Judgment against the city of the Court of Appeals and of the court of common pleas will be
 
 *153
 
 reversed, and final judgment entered here in favor of the city of Elyria.
 

 Judgments reversed.
 

 Jones, Matthias, and Robinson, JJ., concur. Day, J., concurs in proposition one of the syllabus.
 

 Allen, J., not participating.