## HUDSON *v.* CITY OF TERRE HAUTE.

[No. 13,153.   Filed January 11, 1929.]

*Otis Cook* and *J. T. Walker*, for appellant.
*Miller Davis* and *Clay A. Phillips*, for appellee.

McMAHAN, P. J.—This is an action by Olive C. Hudson, appellant, against the city of Terre Haute, appellee herein, on account of personal injuries received by her as the result of a fall upon a street, which she alleges

was caused by the negligence of appellee in placing and maintaining a safety zone marker in one of its streets. A demurrer was sustained to her complaint, hence this appeal.

The complaint alleges that appellee negligently caused six circular pieces of metal, twelve or fifteen inches in diameter and three or four inches high in the center and sloping to the edge, the same being placed parallel with the street car tracks and about ten feet apart, each of said pieces of metal being fastened to the pavement in the street by means of a bolt which extended a half inch above the top of the metal to be used to mark a safety zone in the street; that appellee required street cars to stop at a point just south of these markers, for the purpose of receiving and discharging passengers; that these pieces of metal "were of such a character as to endanger the life and safety of persons using the street for the purpose of alighting from or boarding street cars," all of which facts were well known to appellee long prior to the time of appellant's injury; that it was practical for appellee to have designated and maintained the safety zone in the street without rendering the use thereof by pedestrians unsafe; and that appellant, while attempting to board a street car, struck one of such pieces of metal with her foot, which caused her to fall upon the hard pavement in the street and injure herself. The complaint also alleges that notice of such injury was given appellee as required by statute.

Appellant bases her cause of action upon the theory that it is the duty of a city to use reasonable diligence to keep its streets in a reasonably safe condition, and that appellee was negligent in allowing the safety markers to remain in the street. Appellee contends that in establishing safety zones and maintaining the markers in the street, it was exercising a governmental function; that it is immune from liability for damages arising from

the exercise of such function or from negligence in the manner of performing such function; and that a recovery can be had against a city only when it negligently performs or negligently fails to perform a duty in its nature ministerial, and then only in cases when the ministerial duty is imposed by law. Appellant counters with the proposition that a city cannot escape liability for damages resulting from its negligence in failing to maintain its streets in a reasonably safe condition upon the theory that such failure is due to a governmental function.

We do not deem it necessary to enter into a discussion of the general doctrine that municipal corporations are not liable for damages arising out of the performance or non-performance of governmental functions. Nor is it necessary for us to review the authorities dealing with that subject. As bearing upon this subject, however, see *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 112 N. E. 994; *Mayne* v. *Curtis, Rec.* (1920), 73 Ind. App. 640, 126 N. E. 699; *City of LaFayette* v. *Clark, Admx.* (1921), 76 Ind. App. 565, 132 N. E. 651. While the authorities recognize the general rule to be that municipalities are immune from liability for negligence in the performance of governmental functions, our Supreme Court and this court have, in the cases last cited, recognized exceptions to the general rule. In the Loy case, the city was held liable for an injury caused by negligence in the management of a park, citing *Anable* v. *Board, etc.* (1904), 34 Ind. App. 72, 71 N. E. 272, 107 Am. St. 173, to the proposition that a municipality is liable for the maintenance of a public nuisance, even though, in the maintenance of such nuisance, it is in the discharge of a governmental function.

In *City of LaFayette* v. *Clark, Admx., supra*, this court held that a city could not escape liability for failure to keep its streets in a reasonably safe condition for travel on the theory that such omission was the failure to dis-

charge a purely governmental duty for which there was no liability. In considering this question, it is necessary to keep in mind that this state has adopted the New York rule, which is to the effect that when a municipality has been given by statute the exclusive control and supervision of its streets, it is held liable for damages arising from its neglect in keeping its streets in repair, instead of the Massachusetts rule, which is that no such liability exists in the absence of a statute making it liable for torts committed in connection with governmental affairs. *City of Kokomo* v. *Loy, supra.*

In the instant case, appellee, by its demurrer to the complaint, admits that it negligently maintained the safety markers, which were, as a matter of fact, of "such a character as to endanger the life and safety of persons using said street for the purpose of alighting from or boarding streetcars," and that it maintained the markers in the street with full knowledge of their dangerous character. With this admission, appellee is asking too much, when it asks us to hold as a matter of law that the alleged obstruction or defect in the street was not such a defect as to render it liable for permitting such defect to remain in the street, when it knew such defect was dangerous to life and limb, and when appellee also admits that it was practicable to designate and maintain safety zones without in any manner rendering the use of the street unsafe.

The duty of keeping the streets of a city in a reasonably safe condition for travel is a duty imposed by law, and a city is liable for negligence in failing to perform that duty. *Town of Boswell* v. *Wakley* (1897), 149 Ind. 64, 48 N. E. 637; *City of Indianapolis* v. *Moss, Admr.* (1920), 74 Ind. App. 129, 128 N. E. 857.

Appellee, in its contention that the demurrer to the complaint was properly sustained, cites and relies mainly on *Seibert* v. *Missouri, etc., R. Co.* (1905), 188 Mo. 657,

87 S. W. 995, 70 L. R. A. 72; *Aaronson* v. *New Haven* (1920), 94 Conn. 690, 110 Atl. 872, 12 A. L. R. 328; *City of Jacksonville* v. *Bell* (1927), 93 Fla. 936, 112 So. 885, 53 A. L. R. 163; and *District of Columbia* v. *Manning* (1927), 18 Fed. (2d) 806, 57 App. Dec. 156, 53 A. L. R. 167.

It is to be observed that each of these cases was disposed of on the evidence after a trial and not on demurrer to the complaint. There was no admission in any of them that the alleged defect in the street was dangerous to the safety of persons lawfully using the street and that the municipality, with knowledge of such fact, thereafter negligently and unnecessarily maintained the street in such dangerous condition.

*Seibert* v. *Missouri, etc., R. Co., supra*, was an action against the railroad and the city of St. Louis to recover damages on account of the death of the plaintiff's husband. The complaint alleged that the railroad, with the permission of the city, erected and maintained a large cast-iron structure in that part of a public street intended for driving purposes and extending into traveled portions of the street about four feet from the curb; that an iron brace was embedded in the street a foot farther; that such structure and brace constituted a dangerous obstruction to the use of the street, which fact the defendants well knew. After alleging the circumstances leading up to the death of the decedent, the complaint alleged that such death was caused by the negligence of the railroad in maintaining such obstruction in the street and also in maintaining it in the street without maintaining a danger light nearby at night, and that the city was negligent in permitting the railroad to erect and maintain such structure in the street, and in allowing it to be so maintained without danger lights. The evidence disclosed that the structure in question was erected by the direction of the city pursuant to an ordinance.

A demurrer to the evidence was overruled, after which there was a verdict and judgment against the railroad and in favor of the city. On appeal, the judgment was reversed. The court, after stating that the crucial question was whether the construction and maintenance of the safety gates and appliances so located in the street in obedience to the requirements of the city ordinance constituted a nuisance so as to render the railroad liable, said: "The general rule of law is, that the city has no power to place, or to cause or permit any one to place, a nuisance or obstruction upon a public highway, which renders the highway dangerous to travelers thereon. The question, therefore, in this case is, whether the erection and maintenance of crossing gates, with their necessary appliances and protections, within the limits of the street, constitute such an obstruction as to amount to a nuisance on the street within the meaning of the general rule of law stated."

And, after referring to certain sections of the statute relating to the powers of the city, the court continuing, said: "But without such express grants, the power to pass such police regulations is an inherent power necessary for the protection of the lives and persons of the citizens using the public streets. It is the duty of a city to take all such steps and precautions as are reasonably necessary to render its streets reasonably safe for use by citizens. There can be no two opinions that safety gates where railroads cross public streets are a necessary protection against accidents, and do not constitute a nuisance upon the street."

After quoting from Cooley, Constitutional Limitations (6th ed.) p. 256, where the author said: "And as the state is not responsible for the acts or neglects of public officers in respect to the duties imposed upon them for the public benefit, so one of these corporations is not liable to private suits for either the non-performance or the

negligent performance of the public duties which it is required to assume, and does assume, for the general public, and from which the corporation itself receives neither profit nor special privilege. And the same presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives, will be applied to the discretionary action of municipal bodies and of the state legislature, and will preclude, in the one case as in the other, all collateral attacks," the court, in holding the railroad not liable, said: "If, therefore, the city of St. Louis had erected these crossing gates for the benefit of the general public there can be no question that the municipal corporation would not be liable to a private action such as this. Instead of erecting such gates itself, the city, under its police power, required the defendant company to erect them. As the city could not be held liable for so doing, it follows logically, that the defendant could not be held liable for doing that which the city was under obligation to its citizens to do, and which it required the defendant to do instead of doing it itself. The duty and right and power to erect such gates carries with it a discretion to determine where such gates shall be erected, and the character of the gates to be erected. This discretion is not subject to judicial review or control, unless it is so exercised as to amount to a practical destruction of the street for street purposes, or to a virtual withdrawal of the street from the public use."

In *City of Jacksonville* v. *Bell, supra,* the obstruction complained of was a concrete platform which had been placed in the street, to be used by persons when entering and leaving street cars. The undisputed evidence showed that such safety islands constituted one of the best-known methods of protecting the safety of that part of the public using street cars; that their maintenance in

cities had materially reduced accidents in cities where they had been installed; that their purpose was not to obstruct streets but to make them safer for pedestrians approaching or leaving street cars, and constituted a safety device of well-known efficiency. The evidence also showed that the city maintained an electric light over the safety island, which was burning within an hour before the accident and was in proper working order immediately after the accident. In reversing the judgment and holding the city not liable, the court said: "The use of such devices by municipalities in which heavy traffic is prevalent is to be commended rather than condemned. Obstructions placed in public thoroughfares which are intended for the protection of the general traveling public do not constitute a nuisance and are not prohibited by the law." And after discussing the evidence as to whether the light was burning, and holding that, under the evidence, the city could not be held liable on the theory that the place was not lighted, the court said: "The city could not be held liable for maintaining the obstruction in the street because, as has been hereinbefore stated, the obstruction or construction was placed in the street to render that place safer for the public in general than it would be without such construction and was largely for the purpose of protecting the life, limbs and property of that portion of the general public, who even at this day must sometimes occupy the status of pedestrians, from the crush of powerful vehicles of all kinds."

We call attention to the fact that, in Florida, cities are liable only for gross negligence, and it was held in the case last cited that the evidence failed to show gross negligence, and that it did show the plaintiff was guilty of contributory negligence.

In *Aaronson* v. *New Haven, supra,* the plaintiff recovered a judgment for damages to his automobile,

caused by a collision with a silent policeman which had toppled over and was lying in the street. On appeal, the judgment was affirmed, although it was held that the court erred in giving an instruction to the effect that the mere placing of the silent policeman in the street, with knowledge that it was liable to be displaced so as to become a dangerous obstruction to travel, was a breach of the legal duty the city owed to travelers in the street. In discussing the giving of this instruction, and the allegations of the complaint, the court said: "But, irrespective of the allegations of this complaint, it cannot be said that a sufficiently conspicuous guidepost for traffic, placed at the intersection of two streets, makes the highway defective. We take judicial notice of the common use of such devices at such locations, and that they do serve a useful purpose in directing traffic and promoting obedience to the law."

In the District of Columbia case, the plaintiff's foot struck a safety-zone marker, causing her to fall and injure herself. There was a judgment for the plaintiff, which was reversed, on appeal, for error in refusing to direct a verdict for the defendant. It was there held that the district had the right to establish safety zones; that the use of markers, similar to the ones used by the city of Terre Haute, in the instant case, was not negligence as a matter of law; that the plaintiff had the burden of proving the alleged negligence; and that the evidence of the negligence was not sufficient to justify the court in allowing the case to go to the jury. In discussing the subject, the court said: "It is clearly within the power of the commissioners to establish safety zones for protection of the public in entering and alighting from street cars, as well as in waiting for the approach of cars. The establishment of safety zones, similar to the one in question, extends throughout the city, and is generally known by the public, and their use is recognized. It was

not negligence as matter of law to place these markers in the street in accordance with a uniform plan throughout the city. Before a device placed in the street for the protection of the public generally, and as an aid to the regulation of traffic, can be said to constitute negligence per se, it is proper to consider the scope of the authority reposed in the commissioners in matters of this sort. Modern traffic conditions in large cities are at best highly dangerous and difficult of regulation. Wide latitude, therefore, will be afforded the authorities in devising and establishing safety devices. Platforms in the street for the protection of the traveling public in entering and alighting from street cars may constitute more or less an element of danger to vehicles and pedestrians using the street. The same may be true of the method of establishing safety zones, but it cannot be said that the exercise of such authority by the District commissioners is negligence as matter of law. Where the advantages greatly outweigh the disadvantages, the exercise of the authority will be upheld."

The following cases, discussing the nonliability of a municipality for injuries arising out of negligence in the performance of governmental functions, were disposed of on the evidence, and may be studied with profit. *Town of Hobart* v. *Casbon* (1924), 81 Ind. App. 24, 142 N. E. 138 (cement traffic post; town held liable); *Titus* v. *Town of Bloomfield* (1923), 80 Ind. App. 483, 141 N. E. 363 (silent policeman in center of street; judgment for defendant affirmed, for failure to give statutory notice); *Shannon* v. *City of Council Bluffs* (1922), 194 Iowa 1294, 190 N. W. 951 (bridge truss in center of street; city held not liable); *City of Elyria* v. *Meacham* (1925), 113 Ohio St. 138, 148 N. E. 689 (overhead bridge pier; city held not liable); *Arey* v. *Newton* (1889), 148 Mass. 598, 20 N. E. 327, 12 Am. St. 604 (hitching post; city not liable); *Mayor, etc., of Vicksburg* v. *Harralson* (1924), 136 Miss.

872, 101 So. 713, 39 A. L. R. 777 (bumper in street; city held liable); *Brennan* v. *City of Streator* (1912), 256 Ill. 468, 100 N. E. 266 (water box; city liable); *Dougherty* v. *Village of Horseheads* (1899), 159 N. Y. 154, 53 N. E. 799 (boulder; not liable); *Gulfport, etc., Trac. Co.* v. *Manuel* (1920), 123 Miss. 266, 85 So. 308 (guy wire; not liable); *Wells* v. *Village of Kenilworth* (1923), 228 Ill. App. 332 (elevated safety island; a judgment for the defendant on a directed verdict was reversed).

There was no admission in any of these cases that the alleged defect in the street was dangerous to those lawfully using the street, and that the municipality was negligent in maintaining the street in such dangerous condition, as was admitted by appellee in the instant case.

We hold the court erred in sustaining the demurrer to the complaint, but we refrain from expressing any opinion as to what our holding would have been in the absence of the admission made by appellee by its demurrer of the dangerous character of the markers and of its negligence in maintaining them in the street.

Judgment reversed, with direction to overrule the demurrer to the complaint and for further proceedings.